COOK, *Appellant*, v. THE CONTINENTAL INSURANCE COMPANY.

1.  **Fire Insurance**; MEANING OF "UNOCCUPIED." A policy of insurance upon a dwelling house contained a stipulation that if the premises should become unoccupied, the policy should be void. In an action on the policy it appeared that previous to the fire the assured left the house and went elsewhere to reside, taking part of her furniture with her and leaving the rest; that she left a man in possession with instructions to sleep in the house at night; that this man quit the premises several days before the fire, and did not return; and that no one was in the house when the fire occurred. *Held*, that the house was unoccupied within the meaning of the stipulation, and the policy was void.

2.  **Offer to Compromise**; ESTOPPEL. An offer to compromise never estops the party making it from setting up any legal defense, or asserting any right to which the offer relates.

*Appeal from Pettis Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*Snoddy & Short* for appellant, cited in argument *Kelly v. Home Ins. Co.*, 2 Cent. Law Jour. 478; *Ellington v. Moore*, 17 Mo. 424; *Poor v. Humboldt Ins. Co.*, 125 Mass. 274; *s. c.*, 7 Ins. Law Jour. 874; *Hartford Ins. Co. v. Smith*, 3 Col. 422; *s. c.*, 7 Ins. Law Jour. 140; *American Ins. Co. v. Padfield*, 78 Ill. 167; *s. c.*, 4 Ins. Law Jour. 893; *Chamberlain v. Ins. Co.*, 55 N. H. 249; *Hill v. Equitable Fire Ins. Co.*, (N. H. Sup. Ct. 1877,) 6 Ins. Law Jour. 314; *Harrington v. Fitchburg Mut. Fire Ins. Co.*, 124 Mass. 126; *s. c.*, 6 Ins. Law Jour. 618; *Livingston v. Stickles*, 7 Hill 255; *Catlin v. Springfield Ins. Co.*, 1 Sumn. 434; *Breasted v. Farmers' L. & T. Co.*, 4 Seld. 305; *Ins Co. v. Slaughter*, 12 Wall. 404; *Rann v. Home Ins. Co.*, 59 N. Y. 387; *Reynolds v. Com. Ins. Co.*, 47 N. Y. 597; *Hynds v. Schen. Ins. Co.*, 11 N. Y. 554; *Commercial Ins. Co. v. Robinson*, 64 Ill. 265.

*G. G. Vest* and *Philips & Jackson* for respondent.

HENRY, J.—This is an action on a policy of insurance issued to plaintiff by defendant on the 14th day of February, 1873, on plaintiff's dwelling house in the city of Sedalia, by which defendant, in consideration of $45 paid by plaintiff, agreed to make good to her all such immediate loss or damage not exceeding $2,000, as should happen by fire to said house from the 14th day of February, 1873, at 12 o'clock noon to the 14th day of February, 1874, at 12 o'clock noon. On the 26th day of October, 1873, said property was totally destroyed by fire, and this action was to recover of defendant the amount for which the property was insured. A motion to set aside non-suit taken with leave was overruled, and plaintiff appealed. It was stipulated in the policy that: "If the premises become unoccupied without the assent of the company indorsed hereon, then, and in every such case, the policy shall be void." What is the meaning of the term "unoccupied" as employed in that clause of the policy? This is the principal question for determination. About two weeks before the fire the plaintiff went to Kansas City, Msssouri, to reside, and lived there until after the fire. She shipped a car load of her furniture to the latter place, and left about $300 worth in the house, and instructed one Barnard to sell it, except a bed-room set, and also to rent the house. Joseph Southwick was left in possession, with instructions to remain in possession and sleep in the house until he could rent it. DeLaney was to rent the house. Southwick went to Kansas City three or four days before, and was there when the fire occurred. He left no one in the house, but told DeLaney, with whom he left the keys, except the key of the room he had slept in, to take charge of the house and rent it if he could before he returned. The above is the testimony of plaintiff and Southwick. Her evidence is somewhat contradictory as to whom she gave authority to let the house.

On these facts the question arises, was the house unoc-

cupied when it was burned? If it was, she was not entitled to recover. "Occupation of a dwelling house is living in it." *Paine v. Ag. Ins. Co.*, 5 N. Y. S. C. R. (Thomp. & Cook) 619. "A fair and reasonable construction of the language 'vacant and unoccupied' is, that it should be without an occupant—without any person living in it." 78 Ill. 169. Speaking of a dwelling house and barn, Colt, J., in *Ashworth v. Builders Ins. Co.*, 112 Mass. 422, observed: "Occupancy, as applied to such buildings, implies an actual use of the house as a dwelling place, and such use of the barn as is ordinarily incident to a barn belonging to an occupied house, or at least something more than a use of it for storage. The insurer has a right, by the terms of the policy, to the care and supervision which is involved in such an occupancy," citing *Keith v. Quincy Mutual Fire Ins. Co.*, 10 Allen 228. In Wood on Insurance, p. 164, the above observations of Colt, J., are quoted and approved. In *Paine v. Ag. Ins. Co.*, 5 N. Y. S. C. 619, it was said, that "occupation of a dwelling house is living in it, not mere supervision over it, and while a person need not live in it every moment, there must not be a cessation of occupancy for any considerable portion of time." On page 181, Mr. Wood says: "A practical occupancy consistent with the purposes for which it was insured is intended, and an occupancy that measurably lessens the vigilance and care that would be incident to its use for such purposes, is not an occupancy within the meaning of the term as thus employed." Wood on Fire Ins. In *Whitney v. Black River Ins. Co.*, 9 Hun (N. Y.) 39, it was held that "the words 'vacant and unoccupied' must be construed with reference to the kind of structure or building on the premises. · Occupation of a dwelling house is living in it." In *Keith v. Quincy Ins. Co.*, 10 Allen 228, the suit was on a policy insuring a trip-hammer shop and machinery therein, and the policy contained a provision that if the building remained unoccupied for the period of thirty days without notice to the company, the policy should be void." The facts were,

that for more than thirty days before the loss, the shop was unoccupied for the business, but the tools and machinery were there, and the plaintiff's son went through the shop almost every day to see that everything was right. And an instruction that these facts did not constitute occupancy, but that some practical use must have been made of the building, was approved by the Supreme Court of Massachusetts. Counsel for appellant say that this case has been qualified, but as we have seen in *Ashworth v. The Builders Ins. Co.*, 112 Mass. 422, it was cited in support of the doctrine enunciated there.

Applying the doctrines of the above cited cases to this, it is clear that, within the meaning of the clause under considerations, the premises insured were unoccupied from the time plaintiff went to Kansas City until the fire occurred. In the trip-hammer case the tools and machinery were left in the shop, and plaintiff's son went through the building nearly every day to see that all was right. In *Paine v. Ag. Ins. Co.*, 5 T. & C. 5 N. Y , the party who resided in the house left all his furniture there, and, although absent five or six weeks, frequently returned and looked after the house, and a person living near by visited the house frequently, and maintained a general supervision over it, yet it was held that the assured could not recover. When this policy was issued, the plaintiff kept what witnesses called a " Ladies' Boarding House," and had eight girls with her. After she left the premises, there was no one living in it. She lived in Kansas City, and Southwick was, by her, instructed to sleep in the house, but he did not sleep in it after Wednesday night next preceding the Saturday night of the fire. His sleeping there at night was not an occupation of the house within the meaning of the policy. He did not occupy the house during the day. It is true that there is more danger from incendiaries at night than in the day time, but dwelling houses unoccupied during the day are in more danger from that class than when occupied, and the abandonment of the premises by plaintiff dimin-

ished the security against the destruction of the house by fire.

It will be observed that the condition avoids the policy if the premises become unoccupied, without regard to the period of time that they remain unoccupied, therein differing from the cases cited; and giving it a liberal construction, while the temporary absence of the entire family for a day, or a few days, might not avoid the policy, yet if the family occupying the house abandon it, as in this case, for another residence, requesting a person to sleep there until it should be rented, and such person leaves the place several days before the fire occurs and remains away until it is consumed by fire, with what propriety can it be said that it was "occupied" when burned? If the absence of plaintiff had been for a visit, and not to change her residence, the case might (we do not say would) be different. "Occupation of a dwelling house is living in it." "A mere supervision over it is not sufficient." It was plaintiff's business, under the policy, to see that the house was occupied. If she had put a tenant in possession under a lease for a month, or a year, and four days previous to the fire the tenant had vacated the premises and taken another house, her agreement with that tenant would not have availed her in a suit with the insurance company. So her instructions to Southwick, admitting that the observance of them by him would have saved the policy, cannot avail her, if with or without her consent, he did vacate the premises several days before they were burned. He slept there at night when in Sedalia, but did not take his meals there; was not there during the day. He was not living in the house, and this is not the case of an occupant of the house who was but temporarily absent when the fire occurred; and the circuit court did not err in holding that the house was unoccupied when burned.

The fourth instruction asked by plaintiff, which, it is alleged, was refused by the court, is on the margin so marked, but in the body of the bill of exceptions it is

shown that it was given. It declared that every temporary absence does not constitute non-occupancy, and that if, when plaintiff removed from the premises to Kansas City, she left Southwick in possession with instructions to remain until he could rent the house, then such removal on her part was not a violation of the policy in regard to occupancy. The mere fact of her removal would not have been a violation of that stipulation of the policy, but her removal from the premises and simply directing Southwick to remain there and sleep in the house, unless he did so (if that would) certainly did not obviate the effect of her vacating it, and the court might properly have refused the instruction. It was calculated to mislead the jury into finding that the premises were occupied on the sole ground that plaintiff had given Southwick such instructions.

The fifth asked by the plaintiff was erroneous, and the court did not err in refusing it. An offer to compromise never estops the party making it from setting up any legal defense or asserting any right to which the offer of compromise relates. For the same reason the fifth instruction for defendant was properly given, nor was any error committed on the trial which would warrant a reversal of the judgment. It is, therefore, affirmed. All concur.