No. 14,259.

## THE CONTINENTAL INSURANCE COMPANY OF NEW YORK CITY v. KYLE.

INSURANCE.—*Policy.*—*Condition Avoiding.*—*" Vacant or Unoccupied."*—The policy of insurance upon a dwelling-house was conditioned to be void if the house should become "vacant or unoccupied." The tenant moved out of the building on the 26th day of March. After her removal the parties to whom the owner had previously rented it made certain repairs on the premises, intending to move into the house on the 1st day of April. On the 30th day of March, the day the repairs were completed, the prospective tenants put some hay into the loft of a stable on the premises, and buried some potatoes on the lot near the house. The dwelling was destroyed by fire on the 31st day of March. It was unoccupied when burned, and the only articles in it were some planes left after the completion of the repairs.

*Held,* that the house was vacant within the meaning of the condition of the policy, and that the policy was void.

From the Vigo Circuit Court.

*H. H. Boudinot, W. Eggleston* and *E. Reed,* for appellant.

*C. F. McNutt, J. G. McNutt* and *F. A. McNutt,* for appellee.

BERKSHIRE, C. J.—This was an action brought by the appellant to review a judgment obtained by the appellee against the appellant in an action upon an insurance policy issued by the appellant to the appellee, the said judgment having been obtained in the said Vigo Circuit Court.

The complaint rests upon the first branch of section 616, R. S. 1881. The court below sustained a demurrer to the complaint, and the appellant elected to abide by the ruling upon the demurrer, and judgment having been given for the appellee, this appeal is prosecuted.

The errors of law stated in the complaint are:

1st. The court erred in its conclusions of law upon the facts found and stated in its special finding.

2d. The court erred in overruling the plaintiff's motion to modify said special finding.

3d. The court erred in overruling the motion for a new trial.

The first alleged error involves substantially the same questions as the third, and as the third presents the questions more clearly and satisfactorily, we do not care to consider the first.

It does not become necessary to consider the second alleged error, but see *Levy* v. *Chittenden*, 120 Ind. 37.

The policy sued upon in the original action contained the following conditions:

" Or if the assured, without written permission hereon, shall now have or hereafter make or procure any other contract of insurance, whether valid or not, or if the above mentioned buildings *be or become vacant or unoccupied*, or be used for any other purpose than is mentioned in said application without consent endorsed hereon, or if the property shall hereafter become mortgaged or encumbered, or upon the commencement of foreclosure proceedings, or in case any change shall take place in the title or possession (except by succession by reason of the death of the assured) of the property herein named, or if the assured shall not be the sole and unconditional owner in fee of said property, or if the policy shall be assigned, or if the risk shall be increased in any manner, except by the erection of ordinary out-buildings, without consent endorsed hereon, then in each and every one of the above cases this policy shall be null and void."

The foregoing conditions are such as the parties have a right to place in their contract, and as they form a part of the contract the courts can not disregard them. It is the duty of the courts to recognize and enforce the contracts of parties, when valid and binding, according to the terms and conditions thereof as expressed therein.

The portion of the policy which we have above set out is plain and easily understood. Policies of insurance, like all other contracts, are to be construed with reference to the in-

tention of the parties, to be ascertained from the terms and conditions placed therein. *Barton* v. *Home Ins. Co.*, 42 Mo. 156 (97 Am. Dec. 329); *Straus* v. *Imperial Fire Ins. Co.*, 94 Mo. 182 (4 Am. St. Rep. 368); *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136 (86 Am. Dec. 362; *Wells, Fargo & Co.*, v. *Pacific Ins. Co.*, 44 Cal. 397; *Home Ins. Co.* v. *Gwathmey*, 82 Va. 923.

With this most important rule as our guide when we read and consider the policy here under consideration, we must reach the conclusion that for a breach of any one of the conditions above named, on the part of the assured, the insurer was, because thereof, to be absolved from all liability on account of the policy, unless its consent to such breach of condition should be obtained in advance thereof.

There is no contention that the appellant by endorsement on the policy or otherwise ever gave its consent that the building insured should become or stand vacant.

This leaves but one further question for our consideration: Had the building become vacant before it was burned?

If the evidence establishes the affirmative of this proposition beyond controversy, then the court erred in overruling the motion made in the original action for a new trial, and erred in overruling the demurrer to the complaint in the present action.

In our opinion the court erred in both of its rulings. The complaint charges that the building was destroyed by fire on the 31st day of October, 1886, and the special finding states that the tenant who had occupied the building moved out on the 26th day of October, 1886, and that the fire occurred on the 31st day of the same month.

The undisputed evidence is that the tenant moved out on the 26th day of March, 1886, and that the fire occurred on the 31st day of said month.

We have concluded to set out the evidence as we find it in the bill of exceptions with reference to the occupancy of the building.

The appellee testified : "At the time the building was insured it was occupied by myself, and afterwards by my aunt. She moved out of the house on the 26th day of March, 1886, and took everything out of it. Prior to her removal from the house I had rented it to Crabb and McClintock. After she moved out they made some repairs on the house, and when they finished repairing they left two or three planes in the house. On the 30th or 31st of March the said Crabb and McClintock hauled some hay and put it in the stable loft on the premises, and intended to move in on the 1st day of April, 1886. On the night of the 31st day of March, 1886, the house was totally destroyed by fire. At the time it burned the only articles in it were the planes left there by Crabb and McClintock after they had finished the repairing."

Mrs. Kyle testified : " I am the aunt of the plaintiff. I moved out of the house, which was burned down, for the purpose of letting the new renters in—Crabb and McClintock. There was some hay in the stable and some potatoes buried in the ground near the house by Crabb and McClintock. The house was a frame house. Crabb and McClintock lived about one and a quarter miles from the house."

John Crabb testified : " I and Mr. McClintock, prior to March 26th, 1886, rented the house belonging to Mr. Kyle, which was burned down on the 31st day of March, 1886. After we rented it Mrs. Kyle moved out, on the 26th day of March, 1886, and took all of her things out of the house. After she moved out we made some repairs on the house and intended to move into the house on the 1st day of April, 1886. We had moved some of our things on the premises. I put some hay in the stable loft. After we got done repairing we left a plane or two in the stable. They were the only property we had there at the time the house burned down. No one was living in the house when it burned down. It was unoccupied by any one."

Henry McClintock testified: " I and Mr. Crabb rented

the house that was burned down of Mr. Kyle, the plaintiff. At the time we rented it his aunt, Margaret Kyle, was living in it. On the 26th day of March, 1886, she moved out and took all of her things out. After she moved out we made some repairs on the house, and when we finished repairing we left a few planes in said house. On or about the 30th day of March, 1886, we hauled some hay and put it in the stable loft. At the time the house burned down it was unoccupied by any one. The planes were all the property that was in it. We intended to move in the next day after the fire occurred."

We have examined the authorities to which counsel for the appellee in their brief call our attention, and other authorities which we have been able to find in the same line, but think they do not support the rulings of the court to which we have called attention.

As strong a case as we have been able to find in support of the contention of the appellee is the case of *Eddy* v. *Hawkeye Ins. Co.*, 70 Iowa, 472. The syllabus to that case is as follows:

" A tenant moved out of an insured dwelling on Tuesday, and on Wednesday morning the owner took possession, and, with his servants, began cleaning it, and they were continuously engaged during the working hours of each day in cleaning and moving goods into the house until Friday evening, intending that the family should be fully domiciled there on Saturday, but on Friday night the house was burned. Held, that the house was not vacant."

The facts, as stated by the learned judge who delivered the opinion of the court, are as follows:

" The house had been temporarily occupied by a tenant, who removed therefrom on Tuesday. The fire occurred on the following Friday night. The plaintiff was residing in another house, on another part of the farm ; and on the next morning after the tenant moved out of the house which was burned, the plaintiff took possession of it, and his employees

cleaned the house and prepared to move in. They were constantly engaged every day in cleaning the house, and in moving in household goods until Friday evening. By that time there were carpets and bedding, and bedsteads, cans of fruit, chairs, pictures, mirror and a stove, and clothing, a table, and dishes, in the house, and the family were expecting to be there to remain, on Saturday. The farm stock was there, and the plaintiff, or his employees, were in and about the house every day from six o'clock in the morning until seven or eight o'clock in the evening. The preparation for occupying the house was continuous during all the working hours of each day." The court could very well hold, as it did from these facts, that the building was not vacant when burned.

But we hereafter cite a later case from the same court, where the facts were not so favorable to the insurance company as the case before us, in which it was held that the policy could not be enforced.

Most of the cases to which counsel call our attention (if the buildings insured were dwellings), were where there was a permanent occupancy and a temporary absence of the tenant at the time of the fire; and if mills or manufactories, where there was but a temporary suspension of business at the time of the fire.

In construing a condition in an insurance policy against vacancy or non-occupancy the courts will look to the subject-matter of the contract. *Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117; *American Fire Ins. Co.* v. *Brighton Cotton Mfg. Co.*, 125 Ill. 131; *Georgia Home Ins. Co.* v. *Kinnier*, 28 Gratt. 88; *Sonneborn* v. *Ins. Co.*, 44 N. J. L. 220 (43 Am. Rep. 365).

The occupancy of a dwelling, of a mill, of a barn, is each essentially different in its scope and character, and the construction must have reference thereto. *Sonneborn* v. *Ins. Co., supra;* *Kimball* v. *Monarch Ins. Co.*, 70 Iowa, 513. The house covered by the policy here under consideration was a dwelling. It became entirely vacant on the 26th day

of March, 1886, and remained so until its destruction by fire on the 31st day of March. The prospective tenants made some repairs on the building after Mrs. Kyle vacated it, but the nature and character thereof do not appear, nor the length of time they were engaged thereat. It appears that the repairs were completed about the 30th of March, and on that day the prospective occupants moved some hay to the loft of the stable on the premises, and then or before buried some potatoes on the premises, but all of the witnesses state that the building was unoccupied when burned, and had not been occupied after Mrs. Kyle moved out, and that the only things left in it at any time after her removal were a couple of carpenter's planes left there by Crabb and McClintock during the time they were making the repairs and thereafter.

The contract in all of its parts was one that the parties were competent to make, and which they had a perfect right to enter into, and hence they are bound by all of its terms and conditions.

From the time the building became vacant until its destruction the risk which the appellant had assumed was increased because of the vacancy, and it was an increase of risk which the appellant had guarded against by its contract. It would be folly to contend that the building would have been consumed notwithstanding the vacancy. Most certainly the care and vigilance that would have accompanied the occupation of the property for its protection and preservation was lessened because of the vacancy.

In the light of all of the authorities the facts which the record discloses establish beyond question that the property was "vacant or unoccupied" from the 26th of March, 1886, until it was consumed by fire on the 31st of that month.

In _Ætna Ins. Co._ v. _Meyers_, 63 Ind. 238, the condition in the policy and the circumstances of the case and those in the present case do not materially differ. The following is the condition in the policy in that case: " It is hereby agreed and declared to be the true intent and meaning of the parties

hereto, that in case the above mentioned building shall, at any time after the making and during the continuance of this insurance become unoccupied, * * * unless herein otherwise specially provided for, or hereafter agreed by the company in writing added or endorsed on this policy, then and from thenceforth, so long as the same shall be so unoccupied * * * these presents shall cease and be of no force or effect."

We copy the following from the opinion : " It appeared by the evidence that the house was occupied by tenants when it was insured ; that the tenants failed to pay rent when due, and the landlord took steps to remove them. Myers, the owner, testified : ' No one lived in the house at the time of the fire. The tenants left on Friday or Saturday. The building was burned the next Tuesday. The building was used as a tenant house. It was a double tenement, usually occupied by two families. I put the tenants out because they would not pay rent. I had engaged it to S. C. Carney as soon as I could get them out and have the building repaired. A little plastering and whitewashing was all that was needed. Carney was living in my house across the street, and was to go into it for a year, as soon as I could get the tenants out and get Fred Myers to fix the house. The tenant was to move in as soon as it was repaired.' In the case at bar the house was unoccupied at the time it was burned ; it had been unoccupied for about four days ; some of the witnesses make the time longer ; and no definite time when it was to be occupied was fixed. It was to be occupied, as soon as it should be repaired, by Fred Myers. * * As a matter of fact, as we have said, the house was unoccupied when it was burned. By its terms the company was not liable on the policy sued upon. The policy was a contract. What reason appears for giving it an operation by construction different from that which its terms require ? It seems to us that the literal meaning expresses just what the parties intended. Here, a tenant house is insured for a year. A

change of tenants, during the time, is not prohibited, and might naturally be expected; short intervals in which the property would be vacant might naturally occur. The contract provided that, when they did occur, the policy should not be operative during their existence."

In *Cook* v. *Continental Ins. Co.*, 70 Mo. 610 (35 Am. Rep. 438), the condition in the policy was "·if the premises become unoccupied without the assent of the company endorsed hereon, then, and in every such case, the policy shall be void." The following is the learned judge's statement of the facts:

"About two weeks before the fire the plaintiff went to Kansas City, Missouri, to reside, and lived there until after the fire. She shipped a car-load of her furniture to the latter place, and left about $300 worth in the house, and instructed one Barnard to sell it, except a bed-room set, and also to rent the house. Joseph Southwick was left in possession, with instructions to remain in possession and sleep in the house until he could rent it. De Laney was to rent the house. Southwick went to Kansas City three or four days before, and was there when the fire occurred. He left no one in the house, but told De Laney, with whom he left the keys, except the key of the bedroom he had slept in, to take charge of the house and rent it if he could before he returned." And following this recital of the facts, the learned judge goes on to say:

"On these facts the question arises, was the house unoccupied when it was burned? If it was, she was not entitled to recover. ' Occupation of a dwelling house is living in it.' *Paine* v. *Agricultural Ins. Co.*, 5 N. Y. S. C. R. (T. & C.) 619. ' A fair and reasonable construction of the language "*vacant* and *unoccupied*" is, that it should be without an occupant— without any person living in it.' 78 Ill. 169. Speaking of a dwelling house and barn, COLT, J., in *Ashworth* v. *Builders Ins. Co.*, 112 Mass. 422, observed: ' Occupancy,

as applied to such buildings, implies an actual use of the house as a dwelling place, and such use of the barn as is ordinarily incident to a barn belonging to an occupied house, or at least something more than a use of it for mere storage. The insurer has a right, by the terms of the policy, to the care and supervision which is involved in such an occupancy.' In Wood Insurance, p. 164, the above observations of COLT, J., are quoted and approved. In *Paine* v. *Agricultural Ins. Co.*, 5 N. Y. S. C. 619, it was said that 'Occupation' of a dwelling-house is living in it, not mere supervision over it, and while a person need not live in it every moment, there must not be a cessation of occupancy for any considerable portion of time.'" After citing other authorities, the court say: "Applying the doctrines of the above cited cases to this, it is clear that, within the meaning of the clause under consideration, the premises insured were unoccupied from the time the plaintiff went to Kansas City until the fire occurred."

*Insurance Co.* v. *Wells*, 42 Ohio St. 519, supports the contention of the appellant. The tenant moved out with no intention of returning, leaving behind a barrel of corn and a coal-oil can. During the night following the removal the building was destroyed by fire. The court said: "The condition that the policy should be void if the building therein mentioned be 'vacated or unoccupied' was absolute. The parties to the contract were competent to make such a stipulation." The court concludes by holding that the property was vacant and the policy void, and says that the duration of the vacancy was wholly immaterial.

In the case of *Sleeper* v. *N. H. F. Ins. Co.*, 56 N. H. 401, the condition in the policy was: "If the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent endorsed hereon, * * * this policy shall be void."

In the opinion of SMITH, J., it is said: "It is apparent

the insurers intended to guard against the increased risk which inevitably affects buildings where no one is living or carrying on any business.    An unoccupied building invites a shelter to wanderers and evil-disposed persons.    No one interested is present to watch or care for the property, or seasonably to extinguish the flames in case of fire ; and for various reasons that might be enumerated, an unoccupied building is more exposed to destruction, to say nothing of the inducement a dishonest owner would have to turn it, if unprofitable, into money, when insured, by becoming a party to its destruction by fire.    If, then, the motive is to have some one present, occupying and dwelling in the buildings, and interested to preserve the roof  that shelters his family or holds his household goods, that object would plainly be defeated by holding that he and his family may depart with all their possessions, save perhaps, a few articles not needed for present use, and still the premises be considered occupied.  *  *  I can not say that I have any doubt that these buildings were vacant at the time they were burned, in the sense in which that term was used in the policy."

All of the reasoning of the court has much force when applied to the facts of the case we have before us.  In the same case LADD, J., said :  " I think, when the occupant of a dwelling-house moves out with his family, taking part of his furniture and all the wearing apparel of the family, and makes his place of abode in another town, although he may have an intention of returning in eight or ten months, such dwelling-house, while thus deserted, must be regarded as unoccupied—that is, vacated—according to the naturally and ordinarily received import of those terms.  It is the very situation against the hazards of which the defendants undertook to guard themselves, by an express stipulation and condition inserted in the contract upon which this action is founded."

In the case of *Moore* v. *Phœnix Ins. Co.*, 64 N. H. 140 (10 Am. St. Rep. 384), it is held that the words " vacant " and " unoccupied," when used in a policy of insurance in con-

nection with the idea that the insurer was stipulating against an increase in the risk from the absence of persons from the premises insured, must be regarded as interchangeable and equivalent in meaning; that when no one lives in the house it is both vacant and unoccupied, though it may contain articles of furniture which the last occupant failed to remove. In the learned note to the foregoing case (10 Am St. Rep. *supra*, p. 391,) it is said: " There is strong authority in support of the rule that a fair and reasonable construction of the term ' vacant and unoccupied,' is, that the house should be without an occupant—that is, without any person living in it," citing *North American Fire Ins. Co.* v. *Zaenger*, 63 Ill. 464; *American Ins. Co.* v. *Padfield*, 78 Ill. 167 ; *Phœnix Ins. Co.* v. *Tucker*, 92 Ill. 64; *Fitzgerald* v. *Connecticut Ins. Co.*, 64 Wis. 463; *Alston* v. *Insurance Co.*, 80 N. C. 326; *Cook* v. *Continental Ins. Co.*, 70 Mo. 610. And it is stated: " The same construction is given to the term ' vacant or unoccupied.' " *Herrman* v. *Adriatic Ins. Co.*, 85 N. Y. 162 ; *Stupetske* v. *Transatlantic Ins. Co.*, 43 Mich. 373 ; *Imperial Fire Ins. Co. v. Kiernan*, 83 Ky. 468 ; *Sonneborn* v. *Insurance Co.*, 44 N. J. L. 220.

As will be remembered, the words " vacant or unoccupied " are employed in the policy under consideration.

In view of these authorities, we repeat, at least in substance, what we have once before said, that we can not well imagine how it can be said that the building covered by the policy upon which the present action rests can be said not to have been vacant when the fire occurred. It was certainly without an occupant in any sense of the term.

In *Sexton* v. *Hawkeye Ins. Co.*, 69 Iowa, 99, it was held that the use of a building for the purpose of storing kegs, jars, etc., was not a compliance with the condition against the vacancy of the building.

In *Feshe* v. *Council Bluffs Ins. Co.*, 74 Iowa, 676, the insured property was a dwelling-house, occupied by a tenant, and the policy provided that it should become void if the

building became " wholly or partially vacant or unoccupied."
The tenant moved out, and five days afterward the property
was burned. The owner, who lived but a half mile distant,
spent a part of each intervening day in examining and clean-
ing the house, but did not stay there at night, and her father,
who worked near, left a few tools in the house at night. It
was held that the house was " vacant and unoccupied " within
the meaning of the policy, and that no recovery could be
had thereon.

In *Bennett* v. *Agricultural Ins. Co.*, 50 Conn. 420, the policy
provided that it should be void " if the dwelling-house hereby
insured shall cease to be occupied as such." At the time of
the insurance the house was occupied by a tenant, who
moved out about six o'clock on a certain evening, and the
house was burned about two o'clock the next morning. It
was held that the policy was void, and was not saved by the
fact that the fire had actually commenced and was smoulder-
ing unobserved when the tenant moved out.

The first of the last two cited cases is in some of its facts
much like the case we have under consideration, but the
facts of this case support more strongly the contention of the
insurer than did the facts in those cases. For a further con-
sideration of the questions discussed we refer to the ex-
haustive note to *Moore* v. *Phœnix Ins. Co.*, *supra*.

At this point it may be well to say that we do not wish to
be understood as holding that a temporary absence of the oc-
cupants of an insured dwelling, the furniture and other con-
tents remaining undisturbed during such temporary absence,
would render a policy of insurance thereon inoperative be-
cause of a condition against vacancy.

The point is made by counsel for the appellee that counsel
for the appellant do not discuss in their brief the ruling of
the court upon the motion for a new trial, and therefore
waive it. In this contention counsel are mistaken as to the
fact.

The judgment is reversed, with costs, with direction to the court below to overrule the demurrer to the complaint, and proceed in accordance with this opinion.

Filed May 28, 1890.