## W. R. YOUNG, Respondent, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed November 4, 1919.

1. **INSURANCE:** Burglary Insurance: Forfeiture of Policy: Burden of Proof. In an action on a residence burglary insurance policy where insurer refused to recognize liability on the policy, on the ground that the building was not occupied as a dwelling within the meaning of the policy, *held* that the burden of proof to show the unoccupied condition of the premises as a dwelling was upon the insurer.

2. ———: ———: Occupancy of Dwelling: Construction. Where under the terms of a residence burglary insurance policy it was agreed that the premises might remain unoccupied for a period of four months in each calendar year, without prejudice to the insurance, the insurer was not relieved from liability where it appeared that the goods insured were in an unfinished dwelling house occupied by insured's family in the day time, and wherein insured occasionally slept at night pending the completion of the house; a dwelling house to be occupied must have in it the presence of human beings as their customary place of abode, not absolutely continuous but as a place of usual return.

3. ———: ———: ———: Insurance on Unoccupied Building: Evidence. In an action on a residence burglary insurance policy wherein the issue of a forfeiture of the policy by failure to occupy the house as a dwelling was raised, evidence of the practice or custom of insurer with reference to granting insurance on uncompleted houses not occupied as dwellings was clearly inadmissible.

4. ———: ———: Delay in Payment of Loss: Penalty. In an action on a residence burglary insurance policy permitting the dwelling house to remain unoccupied for a period of four months in each calendar year, where it appeared that the insurance was written October 13, 1915, and the loss occurred November 2, 1915, *held* that the insurer was not warranted in refusing to pay such loss,

and under the circumstances the court was justified in finding that there was a vexatious refusal to pay the loss and in assessing an attorney's fee as a penalty.

Appeal from the Circuit Court of St. Louis County.— *Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*George A. Hodgman* for defendant-appellant.

(1) Plaintiff is bound to the truth of the material representations of fact or warranties contained in the schedule of statements incorporated in the policy by his acceptance of the same and by presenting a claim under it. Overton v. Insurance Co., 79 Mo. App. 1; Terminal Ice & P. Co. v. Insurance Co., 196 Mo. App. 241; Tiffany v. Insurance Co., 199 Mo. App. 36; Mers v. Insurance Co., 68 Mo. 127; Wolowich v. Surety Co., 136 N. Y. Supp. 793. (2) The representation by plaintiff in the schedule of statements in the policy that the premises were, on October 13, 1915, occupied by him as a dwelling was material to the risk; the said representation was untrue; defendant did not know of its untruth and relied upon its truth in accepting the risk; accordingly defendant was misled and there was never any meeting of minds on the contract and the policy was void from date of issue. Cook v. Insurance Co., 70 Mo. 610; Craig v. Insurance Co., 34 Mo. App. 481; Hoover v. Insurance Co., 93 Mo. App. 111; Burnham v. Insurance Co., 75 Mo. App. 394; State v. Jones, 106 Mo. 302; R. S. (1909), sec. 4506; State v. Leedy, 95 Mo. 76; Orr Trucking Co. v. Surety Co., 73 Atl. 541; Reese v. Fidelity Co., 156 N. Y. S. 408; Bacouby v. U. S. Fidelity, etc., Co., 113 N. Y. S. 20; Axe v. N. Y. Fid., etc., Co., 86 Atl. (Pa.). 1095; Limburg v. Insurance Co., 48 Am. S. Rpts. 463 (and cases cited); May on Insurance (4 Ed.), secs. 241 and 249A (and cases cited); Herrmann v. Insurance Co. 85 N. Y. 162; Barry v. Insurance Co., 35 Hun, 601, 604-5; Spahr v. Insurance Co., Boardman v. Ins. Co., 31

Ontario Repts. 525.   (3) The court should have admitted
evidence on the practice of the defendant to insure
such hazards as it may select, and the authority of its
underwriter to accept certain hazards, in view of his
declaration of law No. 3.   Miller v. Ins. Co., 106 Mo. App.
205.   (4) That there was no basis in law or in fact for
an award based on vexatious delay and attorney's fees,
and the court's allowance is directly contrary to his
declaration of law No. 4, and to the law of this State.
(5) The court erred in failing to give declarations of
law A, B and C, requested by defendant.   Declaration
C sets forth the law of occupancy of a dwelling and
should have been given; it is decisive of the case.   See
cases cited under Point 2.   (6) Even if plaintiff had
occupied premises as dwelling prior to October 13, 1915,
he had, as far as testimony shows, not occupied it as a
dwelling from that date to the date of loss within the
meaning of the law; the policy was therefore void by its
terms as pleaded in the answer.   See cases cited under
Point 2.

*Robert C. Powell* for respondent.

(1) Cohen was defendant-appellant's agent, and his
principal was bound by his knowledge of the conditions
of the risk as they existed.   Terminal Ice & Power
Co. v. Insurance Co., 198 S. W. 1124;   Lehmann v. In-
surance Co., 183 Mo. App. 696;   Turner v. Insurance Co.,
195 Mo. App. 138;   Kring v. Insurance Co., 195 Mo. App.
133;   Snyder v. Insurance Co., 196 S. W. 1022;   Guerin-
ger v. F. & D. Co. of Md., 184 S. W. 936;   22 Cyc, 1434;
Giffey v. Insurance Co., 206 S. W. 402.   (2) Courts are
guided in their construction of contracts by the intent
of the parties and insurance policies are to be construed
so as to effectuate, not defeat, the insurance.   If their
language is doubtful, it is to be strictly construed against
the insurer and in such a way as to protect the interests
of insured.   Stix v. Travelers Indemnity Co., 175 Mo.
App. 171;   De Mun Estate Corp. v. Insurance Co., 196

Mo. App. 1; Garner v. Insurance Co., 200 S. W. 450; Strother v. Business Men's Accident Assn. of Am., 193 Mo. App. 718; Brown v. Insurance Co., 197 Mo. App. 317; Dunn v. Insurance Co., 197 Mo. App. 457; Most v. Insurance Co., 196 S. W. 1064; 38 Cyc. page 275; Lemaitre v. Casualty Co., 195 Mo. App. 599. (3) The premises were occupied by the plaintiff as his dwelling house at the time the policy was issued to him and at the time of the burglary. For authorities we are content to recite all cases on the subject indicated by appellant, and, in addition, the following: Waddle v. Insurance Co., 184 Mo. App. 571; Barnett v. Vaughan Institute, 119 N. Y. Sup. 45, 46; E. Montpelier v. City, 66 Atl. 100; People v. Mix. 149 Mich. 260. (4) The question of vexatious delay is for the jury—is this case for the court sitting as such, and the fact that it became necessary to institute a suit to collect it and the fact that defendant declined to pay without litigation is of itself evidence that the delay was vexatious. Stix v. Indemnity Co., 175 Mo. App. 171; Huls v. Insurance Co., 207 S. W. 270; Glove v. Insurance Co., 193 Mo. App. 492; Beck v. Insurance Co., 207 S. W. 248; Dodge v. Insurance Co., 189 S. W. 609-610; Lemaitre v. Casualty Co., 195 Mo. App. 599; Hayden v. Imperial Assurance Co., 197 Mo. App. 574; Fay v. Insurance Co. 268 Mo. 373; Barber v. Insurance Co., 269 Mo. 21.

STATEMENT.—This is an action on what is commonly known as a residence burglary or theft policy. The petition is in the usual form setting forth the fact of the issuance of the policy on October 13, 1915, and alleging a loss thereunder on or about the second day of November, 1915, of property of the value of $468.65. The petition prays for judgment in that amount, together with interest, and also asks that ten per cent penalty be assessed thereon, together with $150 attorney's fees on account of vexatious refusal of defendant to pay the loss under the policy.

The answer, as a defense, sets up a provision in the policy to the effect that the plaintiff in the Schedule of Statements attached to said policy represented that the said premises as defined in the policy were occupied by the assured as his dwelling, and that such policy was issued upon the faith of said representation, which representation was false and untrue, and that said assured did not, prior to the issuance of said policy or between that time and the time of the loss, occupy said premises as his dwelling.

While there was no formal application setting forth such representation, such fact was stated in the policy, which policy respondent accepted and under which he presented a claim.

The appellant company paid into court for the use of respondent the premium received from the policy, together with interest thereon at six per cent from the date of the policy.

A further defense was set up to the effect that the conditions of the risk were so changed by the respondent after the issuance of the policy as to materially increase the hazard, contrary to a provision in the policy. This latter defense was apparently abandoned at the trial, and no further reference is necessary thereto.

The reply was a general denial.

The cause was heard by the court, a jury being waived. Judgment was rendered in favor of respondent against the appellant company for the sum of $456.90, with interest at six per cent, together with $100 attorney's fees on account of vexatious delay, making a total of $566.27.

After the usual steps, an appeal was duly perfected to this court.

While a number of errors are assigned, the main question in this case is whether or not the respondent occupied the premises insured as his dwelling at the time the policy was taken out. This is conceded by the appellant and is the decisive point in the case outside of the question of the penalty portion of the judgment.

In the event the respondent occupied said premises as his dwelling within the meaning of the policy, it is conceded by the appellant that he is 'entitled to recover, and this was the sole ground on which the appellant company denied liability under the policy. This denial took place immediately after the loss and several times thereafter.

The facts disclosed by the record on the question of the occupancy of the premises are these: The respondent Young had resided in the City of St. Louis, and during the summer of 1915 started the erection of a new building which he intended to occupy as a home at 74 Arundel Place, St. Louis County. At the time the lease expired upon the city house, his new home in the country was not entirely completed. On September 18, 1915, it is conceded that respondent Young moved all of his personal property, furniture, clothing, etc., for himself and his family, to the Arundel Place house in its uncompleted state. At that time the contractors were still at work on the house, doing the finishing up on the inside in the way of painting, decorating, etc.

At the solicitation of Cohen, an insurance agent, the burglary insurance was effected on October 13th, following. Respondent Young was a traveling salesman and was away from St. Louis a part of this period. While the evidence is a bit indefinite as to number of times he actually slept at the house between September 18th and November 2nd, the date of the loss, it appears that he was in St. Louis on or about the time the policy was taken out, and while here slept at the house and thereafter while in the city, except upon several occasions, when he stayed with his family who were in the City of St. Louis with a sister of respondent's wife. All of respondent's clothing was kept at the house. On account of the fact that the house lacked the ordinary conveniences in the way of heat and water, the respondent's wife and child stayed in the City of St. Louis at night with the wife's sister. The wife of respondent spent her days at the Arundel Place house. It appeared

that at the times the respondent occupied this house at night he slept upon a davenport in one of the upstairs rooms, and on one or two occasions had with him his child. One of the workmen testified that on several occasions he found the respondent at the house in the morning when he came to work. During the period between the time respondent moved his furniture and the time of the loss, the respondent and his family were away from St. Louis for a period of about ten days. It does not appear whether this period was before or after the time the policy was issued. The household goods and clothing owned by respondent were moved into the upstairs rooms of the building on account of the fact that the workmen were still engaged in painting and decorating. There was no heat, light or water in the house at the time, and respondent testified that at the time he was there he used a lamp and an electric flash-light.

The week previous to the burglary respondent had slept in the house once or twice and was there on the Sunday night previous to November 2nd, the time of the loss. The day preceding the burglary, the respondent's wife was, as she testified she had been on every day prior thereto, at the house up until 8 or 8:30 at night, at which time she locked the doors and windows. The next morning one of the workmen noticed a painter's ladder leaning against the back of the house, and upon investigation found one of the upstairs windows had been broken out and the house entered and the goods stolen. Respondent at this time was out of the city, and his wife on learning of the burglary immediately notified the police and afterwards called up the Insurance Company. The same day the agent of the company conferred with Mrs. Young at her sister's house in the City of St. Louis in reference to the loss, and later inspected the premises in St. Louis County. At this time the agent had Mrs. Young make out what is known as a burglary information blank, which gave information in reference to the burglary, stating in a general way the character of property that had been stolen, although not giving this

in detail, as at that time Mrs. Young was unable to state exactly what articles were missing. In this paper, which was signed by Mrs. Young and witnessed, the statement is made, that owing to a delay of the contractors they had not been able to get into the house to occupy it.

The appellant company immediately denied liability, alleging as a reason therefor that the house had not been occupied as a dwelling in accordance with the terms of the policy. A few days thereafter when Mr. Young returned to the city he held a conference with the representatives of the Insurance Company, at which time liability was again denied, but before that decision should become absolutely final, it was agreed between the respondent and appellant that the agent of the Insurance Company should submit the matter to the New York office for its final decision. This was done in due course, and the company finally on December 15, 1915, notified the respondent that they would not recognize liability on the policy, on the ground that the building was not occupied as a dwelling within the meaning of the policy. Thereafter in February 1916, the respondent filed the present action.

## OPINION.

BIGGS, C. (after stating the facts as above).—Appellant contends that under the evidence the respondent did not at any time actually occupy the premises as his dwelling within the meaning of the policy, and relies mainly on the case of Cook v. Insurance Company, 70 Mo. 610. We have examined that decision and find that the facts there differ materially from the facts in case at bar, in this that in the Cook case the assured left the house and went elsewhere to reside, intending to move away permanently. While the assured in that case left a man in possession with instructions to sleep at the house at night, the man quit the premises several days before the fire and did not return. No one was in the house when the fire occurred. In that case the policy

provided: "If the premises should become unoccupied the policy should be void." In the instant case it is conceded that the respondent intended to occupy this dwelling house, and there is ample evidence to show that he did in fact do so in person on a number of occasions prior to the loss.

The burden of proof to show the unoccupied condition of the premises as a dwelling was upon appellant.

While we think there is ample evidence in the record to justify the court, sitting as a jury, in finding that the respondent did in fact occupy this house as his dwelling between the date of the policy and the loss, still we are of the opinion that in view of other provisions in the policy it would be unnecessary to decide this question, as we think such provisions preclude appellant under the facts from contending that this house between October 13, 1915, the date of the policy, and November 2, 1915, the date of the loss, was not occupied by the respondent as a dwelling. This by reason of the 5th provision under the heading "General Provisions," as follows:

"The assured is privileged to leave the premises without an occupant in any one policy year for a period of four months, without prejudice to the insurance under the policy, etc. . . .

It is further provided by provision No. 7 that

"Within the meaning of this policy, the premises shall be deemed to be without an occupant when the assured and members of his household, including the domestic servants, are absent therefrom."

Under these provisions the respondent had a right to leave the premises unoccupied. The policy must be read as a whole, and by its terms appellant company agreed that the premises might remain unoccupied for a period of four months in each calendar year, without prejudice to the insurance.

Appellant has cited us to a number of Missouri cases defining the meaning of the word "unoccupied" as

applie l to dwellings, all of which we have examined with care. They all differ from the case at bar.

In the Cook case, 70 Mo. 610, the insured left the house and went elsewhere to reside before the loss and intended to move away permanently.

In Craig v. Insurance Company, 34 Mo. App. 481, the assured had rented his place to a tenant who was to move in March 1st, and had left the house four weeks before the fire, intending to move away. The fire occurred when no one was there. It was not a case of mere temporary absence.

The facts in Hoover v. Insurance Company, 93 Mo. App. 111, 69 S. W. 42, show that the promises were entirely abandonded for a period of two months.

In Burnham v. Insurance Company, 75 Mo. App. 394, the fire policy gave thirty days for completion of building and to occupy as a dwelling. It was not completed within the thirty days and there was no pretense that it was occupied at the time of the fire.

In all these cases the insured did not actually use the house as a dwelling place and did not intend it as his home at the time, either never having moved in, or having moved away permanently when the loss occurred.

The meaning of occupancy as applied to insurance policies has been well stated by COLT, J., in Ashworth v. Insurance Co., 112 Mass. 422, as follows:

"Occupancy as applied to such buildings implies an actual use of the house as a dwelling place or something more than a use of it for storage.

"A dwelling house to be occupied must have in it the presence of human beings as their customary place of abode, not absolutely continuous but as a place of usual return."

Appellant assigns error in the refusal of the trial judge to admit evidence of the practise or custom of appellant company with reference to granting insurance on uncompleted houses not occupied as dwellings. Such evidence was clearly inadmissible, it being immaterial

about its custom of writing policies. The company had written the policy in suit, and the question presented was whether it was liable under its provisions.

The only remaining question is whether the trial judge was warranted in assessing an attorney's fee as a penalty for vexatious refusal to pay the loss. Stated in another way, was there any evidence in the record of a vexatious refusal to pay on the part of the appellant company which would justify the court as a trier of the fact in assessing the penalty?

The last word on this subject comes from our Supreme Court in the case of Non-Royalty Shoe Company v. Phoenix Assur. Co.,— Mo.—, 210 S. W. 37, 1. c. 43, where Judge FARIS approves a general rule laid down by the Kansas City Court of Appeals in the case of Patterson v. American Insurance Company, 174 Mo. App. 1. c. 44, 160 S. W. 62. This rule reads thus:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty."

In the instant case the appellant company denied liability from the beginning and refused to pay. In view of the statement made by Mrs. Young, the wife of the respondent, to the company immediately following the loss to the effect that the house at the time of the burglary was unoccupied, we would be of the opinion that the company would be justified in contesting the question of liability, were it not for the fact that the policy contained the provision which permitted the house to remain unoccupied for a period of four months in each calendar year. The insurance was written on October 13, 1915, and the loss occurred Nov. 2nd, following. Considering this provision we are of the opinion that the company was not warranted in refusing to pay this loss, and un-

der the circumstances the court was justified in finding that there was a vexatious refusal to pay. At least such facts and circumstances were sufficient evidence to sustain the finding of the trier of the fact.

In view of the above and foregoing the Commissioner recommends that the judgment of the trial court be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed.

*Reynolds, P. J.,* and *Allen* and *Becker, JJ.,* concur.