Laurence M. BLEDSOE, Appellant,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent.

No. 23150.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Falzone & Falzone, Moberly, for appellant.

Alexander, Welliver & Wayland, and John M. Cleaveland, Columbia, for respondent.

HUNTER, Presiding Judge.

Laurence M. Bledsoe, plaintiff-appellant, sued Farm Bureau Mutual Insurance Company, defendant-respondent, on its insurance policy for the loss by fire on August 20, 1956, of his rental dwelling. The verdict and judgment were for appellant for $1,500. The trial court, declaring it should have sustained defendant's motion for a directed verdict at the close of the evidence, sustained defendant's motion to set aside the verdict and to enter judgment for defendant in accordance with the motion for a directed verdict. Plaintiff has appealed from the resultant judgment for defendant.

■ The appeal raises questions concerning (1) whether the insured premises were vacant within the meaning of the policy for more than 60 days before the fire; (2) whether there was either waiver or estoppel to claim the benefit of the vacancy provision of the policy; and (3) whether plaintiff had released his claim or had acted under mutual mistake in regard to a purported release he signed. Since the contention is the trial court erred in setting aside the jury's verdict for plaintiff and in directing a verdict for defendant, on appeal it is our duty to review the pertinent evidence in the light most favorable to plaintiff; giving him the benefit of every inference reasonably deductible therefrom, and disregarding evidence favorable to defendant.

Plaintiff owned an eighty acre tract of land in Randolph County upon which there were two dwellings. With his wife and children he lived in one dwelling, which his counsel and we refer to as plaintiff's residence. The other dwelling, with a summer kitchen, will be referred to as the rental dwelling.

Defendant's agent, Robert Liesman, a regular customer of plaintiff and his wife at their service station knew that plaintiff had insurance coverage from another company on the two dwellings and that it would soon expire. He had been trying to sell plaintiff this insurance for sometime and frequently discussed it with them. At the time he wrote the policy, September 26, 1955, Liesman knew that there was no tenant in the rental dwelling; that it had been vacant since February, 1955; and that plaintiff had been trying to rent the property since February, 1955, but as yet had not been successful and had no particular tenant in mind. He also knew that plaintiff had in the rental property stored furniture worth $407.00 from plaintiff's residence.

Plaintiff was asked:

"Q. What did Mr. Liesman tell you about that situation? A. I remember he said as long as there was furniture and I was figuring on renting the house, had planned to rent it again, that it would be permissible.

"Q. Did he also know that you were using the house some at that time? A. Yes. * * *

"Q. Now Mr. Bledsoe, I think you said on direct examination that you and Mr. Liesman had a conversation concerning the fact that the place was vacant, in which conversation he told you that he considered as long as you were using it as frequently as you were and had furniture and articles in it that the company did not consider it to be vacant? A. That's right.

"Q. He also knew you had had unsatisfactory tenants when they moved in 1955. A. That's right.

"Q. And he also knew you would not rent it to anyone that was unsatisfactory? A. Yes."

Mrs. Bledsoe testified:

"Q. And what did you tell Mr. Liesman as to the place being vacant, as far as there being no tenant there? A. Well, there hadn't been one in it since

early in the year and we had been trying to rent the place, but it was very hard to find anyone who was a suitable tenant, as we had had so much trouble with the last ones, that we didn't want to rent it to just anyone, but we intended to rent it.

"Q. Did Mr. Liesman know that? A. Yes.

"Q. What did Mr. Liesman do insofar as trying to find you a tenant? A. Well, he and a lot of other people offered to try and help us find one; that in the business we were in we came in contact with quite a few people and he'd be on the lookout for a suitable tenant.

"Q. Including Mr. Liesman? A. Yes.

"Q. Now, did you have any discussions with Mr. Liesman as to whether or not the company considered that you and Laurence occupied this house? A. Well, I don't know how the company felt about it, but he did say since we intended to rent it and we had furniture in it that he would go ahead and write up the insurance."

Plaintiff and his family would take lunch to the rental dwelling and eat it. They used it for picnics and recreation. He kept stock there. He averaged going to the rental dwelling "three or four times a week. Sometimes every day." His wife and children went there six days out of the week. The house had electricity and a well, and they cooked there.

Two policies of insurance were issued at the same time by defendant, and both had the effective date of September 26, 1955. Policy No. G–15230 insured plaintiff's residence and its contents. Policy No. G–15229 insured plaintiff's rental dwelling, and contained the mentioned vacancy clause, " * * this company shall not be liable for loss occurring * * * (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days."

On August 20, 1956, the rental dwelling was totally destroyed by fire caused by lightning striking it. .

With this evidence before us, we must decide: Was the evidence such as to permit a jury to find waiver by defendant of the benefit of the sixty day vacancy provision; and, if not, was it such that a jury could decide only that the rental dwelling was vacant or unoccupied rather than occupied and not vacant, within the meaning of the sixty day policy provision.

■ We are convinced that there is evidence from which the jury could find that the defendant insurance company had waived its occupancy requirement.

■ An insurer is bound by the information gained by its agent in taking the application, and constructively knows what he knows. It is the established law in this state and elsewhere that where the insurer's agent knows that the insured building is not and is not likely to be occupied, or will not be occupied, within the prescribed time and yet issues the policy the insurer thereby waives the insured's compliance with the vacancy clause of the policy.

In the case of Heindselman v. Home Insurance, Mo.App., 282 S.W.2d 191, the insurance agent knew not only that the building was then unoccupied but also that there was no intention to complete and occupy the building as a dwelling and that it would not be completed and occupied within the 90 day period, yet issued its policy excusing itself from liability in such event. The court ruled that issuance of the policy with that knowledge was a waiver of the policy provision. In the case of Chamberlain v. British-American Assur. Co., 80 Mo.App. 589, the defendant issued to plaintiff a policy containing a ten day vacancy clause, although the agent well knew the dwelling was then vacant and undergoing prolonged repairs. Two months later the building was

destroyed while still unoccupied. The court upheld the plaintiff's contention that the defendant had waived the ten day vacancy clause by issuing the policy with such knowledge. In Thackery Mining & Smelting Co. v. American Fire Ins. Co., 62 Mo. App. 293, the fire insurance policy covering the buildings of a mining plant provided the policy shall be void " * * * if it cease to be operated for more than ten days." The court held this provision was waived saying, loc. cit. 298, "it is enough * * * that the defendant's agent, at the issuance of the policy, knew not only that the plant was not then being operated, but in all probability that it would not be operated for some time to come. The risk was clearly taken for a non-operated machine or plant." See, also, Tiller v. Farmers' Mutual Fire Ins. Co., 220 Mo.App. 1337, 296 S.W. 464 (10); Annotation, 96 A.L.R. 1259; 29 Am. Jur., sec. 917, p. 121, and sec. 1072, p. 238. In line with these authorities, we conclude the evidence was such as to present a jury question on the issue of waiver.

■ We turn to the question of whether the premises were vacant or unoccupied. The term "vacant" is generally construed to mean empty and without inanimate objects. It implies entire abandonment, nonoccupancy for any purpose. 45 C.J.S. Insurance § 556a, p. 303; 29A Am.Jur., sec. 907, p. 112; 4 Couch on Insurance, sec. 970c, p. 3411, Florea v. Iowa State Ins. Co., 225 Mo.App. 49, 32 S.W.2d 111. In Norman v. Missouri Town Mut. Fire, etc., Insurance Co., 74 Mo.App. 456, 460, it is stated, "We think the building was not at the time *vacant* in the ordinary meaning of the word. The word vacant primarily signifies "deprived of contents; empty; not filled; as a vacant room. A thing is vacant when there is nothing in it. Webster's unabridged dictionary. Vacant and unoccupied are not synonymous—though sometimes so used. * * * A house filled with furniture (such as the one then under consideration) can not be said to be vacant, the primary and ordinary meaning of which is empty." Our conclusion is that there was

evidence to support a jury finding that the rental dwelling was not "vacant".

The portion of the exclusion clause, "unoccupied beyond a period of sixty consecutive days" presents a closer question. It is a fundamental rule that conditions in a fire insurance policy against allowing the insured premises to become vacant or unoccupied are to be construed with reference to the species of property insured and the use contemplated for this particular type of property. Annotation—Insurance—Vacancy, 158 A.L.R. 894. One frequently stated definition of "occupancy" particularly as used with reference to dwelling houses is, "In general, the term occupancy refers to the use of the property by human beings as their customary and usual place of habitation, and who, when absent temporarily, contemplate returning thereto as their place of abode." Appleman, Insurance Law and Practice, Vol. 4, p. 757. In Florea v. Iowa State Ins. Co., supra, loc. cit. 114 of 32 S.W.2d, it is expressed: "Generally speaking, the cases say that the term 'occupancy' refers to human habitation, and means the act of living in a particular house, and that occupation is at an end whenever the building is no longer the place of abode of any living person. Often proof of whether any one has slept in the house during the prescribed period is strongly emphasized, and it was in this case, but we know of no decision which goes so far as to hold as a matter of law that sleeping in a house is in all events essential to occupancy. Such fact *is undoubtedly highly material upon the question of occupancy, but it will not be necessarily decisive of it under all circumstances. Thus we find the rule to be that, where there is no condition or stipulation in the policy whereby the insured obligates himself either to limit or to extend his occupancy to any particular purpose, then any occupancy will suffice which satisfies the letter of the condition of the policy, even though it may be by one who is there possessio pedis, such as a caretaker or watchman, not having the house as his domicile.* Walton v. Phoenix Insurance Co., 162 Mo.

App. 316, 141 S.W. 1138; Pabst Brewing Co. v. Union Insurance Co., 63 Mo.App. 663."

In the Florea case, supra, the farm house had been rented to one Linson who occupied it. Linson rented another farm and was preparing to move to it. His wife and children had gone to visit her parents. He was in the process of moving his household goods out but he still had some there and slept there within the ten day vacancy clause period. The court held in effect that his occupancy had not ceased so as to leave the premises unoccupied for the full ten day period. In the Walton case, supra, the insured house was rented to one Bass who intended to move in it as his home. He and his wife moved in three loads of furniture, arranged it in the various rooms, cleaned up the floors and stayed there until four or five o'clock that afternoon. They then returned to their former home to sleep that night. The fire occurred that night. The appellate court affirmed, saying "They most certainly occupied it that day."

In Cook v. Continental Insurance Co., 70 Mo. 610, the policy provided, "If the premises become unoccupied * * * the policy shall be void." The court noted temporary absence from one's abode might not be unoccupancy but that "occupation of a dwelling house is living in it." "A mere supervision over it is not sufficient." In Craig v. Springfield F. & M. Ins. Co., 34 Mo.App. 481, the tenant and his wife had left the house for another abode. Some furniture was left in it. Occasionally he or his wife visited it. Referring to the Cook case, supra, the court stated, "Occupation of a dwelling place is living in it. Supervision over it is not sufficient * * * neither plaintiff nor his family intended to return to the house as a place of abode, but * * they did intend to hold it, in part at least, as a place for the safe keeping of their household effects until they could arrange for a different residence." The court concluded this was not "occupancy".

In Harper v. Stoddard County Mutual Fire Ins. Co., Mo.App., 51 S.W.2d 534, the evidence, which was somewhat similar to that before us, was that the owner's tenant had moved out of the farm dwelling and a new tenant had been arranged for. Meanwhile, the owners visited the house frequently—almost every day before it burned. The court held it was vacant, saying, loc. cit. 536, " 'Occupancy as applied to such buildings implies an actual use of the house as a dwelling place * * * or * * * something more than a use of it for mere storage.' 'A dwelling house to be occupied must have in it the presence of human beings as their customary place of abode, not absolutely continuous but as a place of usual return.' " See, also, Young v. Fidelity & Casualty Co., 202 Mo.App. 319, 215 S.W. 496, 498. The most recent discussion of the question is contained in the case Drummond v. Hartford Fire Ins. Co., Mo. App., 343 S.W.2d 84, handed down concurrently with this opinion.

We have referred to many of the Missouri cases on this subject. The language of some appears difficult to reconcile with that of others. Each case should be read in the light of its particular facts. For reasons to be mentioned, this case must be remanded for a new trial. The evidence on the occupancy question on retrial, if plaintiff still elects to submit it as well as the waiver issue, may be different. Under such circumstances we believe it best not to undertake to decide the occupancy question on the present record but rather to content ourselves with calling to counsels' attention various decisions on the subject in the hope that they will be of aid in the event of a retrial of this issue.

The record, before us also contains a question of mutual mistake in executing a release. As previously noted, defendant had simultaneously issued plaintiff two policies, one covering his rental house and the other covering his dwelling house. They were numbered G–15229 and G–15230 respectively. G–15230 insured furniture and effects in the dwelling house to the amount of $1,500, and also provided that the insured might apply 10% thereof to furniture and

effects located elsewhere than in his described dwelling house. Policy G–15229 covering the rental dwelling did not provide any coverage for furniture and effects. After the fire which destroyed furniture worth $407 and located in the rental house, the insured's agent, at night in a dark car, presented insured with a release containing the number G–15229 in the sum of $150 which equals the 10% of the contents coverage under G–15230. Plaintiff testified the adjuster told him that no money was due under the policy covering the rental dwelling but that $150 was due on plaintiff's residence policy; that the adjuster told him and he understood he was making settlement under Policy G–15230 for 10% of the $1,500 contents covered; that he, plaintiff, did not know the number G–15229 was written in the release although he tried to read the release in the dark. From the above testimony one reasonably could find and presumably this jury did find under the instructions given that the release which plaintiff signed was intended, mutually, to be a release under G–15230 in spite of the policy number G–15229 on it, and that a mutual mistake had occurred. If it was executed under a mutual mistake it would not be a bar to plaintiff's recovery for the fire loss of his rental dwelling.

Thus, we have concluded that the trial court erred in deciding that plaintiff's evidence did not present a submissible jury case, at least, on the issues of waiver and mutual mistake, and in entering judgment for defendant notwithstanding the verdict for plaintiff.

■ However, defendant complains of Instruction No. 4 given at plaintiff's request, and the jury's verdict is not to be reinstated if it is based upon a prejudicially erroneous instruction. The substance of the instruction is that even though the jury might find that defendant's agent knew the rental dwelling had been unoccupied for more than sixty days at the time of the issuance of the policy, and defendant did not object to the issuance of the policy nor notify plaintiff that the insurance was not applicable to any fire occurring under those circumstances, then defendant is deemed to have consented to such vacancy and to have waived the condition in the policy.

■ We believe the instruction does not sufficiently hypothesize those facts necessary to permit a finding of waiver of the sixty day occupancy clause. As stated in the Heindselman case, supra, loc. cit. 192 of 282 S.W.2d, "We cannot agree that the agent's mere knowledge that the building was unoccupied at the time he issued the policy would be grounds for waiver of a vacancy which was continued beyond the 90-day limit." Coupled with the knowledge of existing vacancy must be facts sufficient to put a reasonable person on notice that the vacancy will or is likely to continue beyond the prescribed period, or the agent must have such actual knowledge. This is to be distinguished, of course, from the situation where the policy excuses itself from coverage in the event of any vacancy, for in such latter event knowledge of vacancy at the time of issuance would be a waiver of the vacancy. This is but an application of the general rule that the issuance of an insurance policy constitutes a waiver of a known ground of invalidity. See, 45 C.J.S. Insurance § 725, p. 718; 29A Am.Jur., Insurance, sec. 1072, p. 238.

■ The law is charitable enough to assume that an insurance company acts in good faith and intends to execute a valid contract in return for the consideration received; and when the policy contains a condition which renders it voidable at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition and to execute a binding contract rather than to have deceived the insured into thinking he was insured when in fact he was not, and to have taken his money without consideration.

■ Plaintiff endeavors to obtain the benefit of this general rule by contend-

ing that defendant's agent knew the rental dwelling had been vacant for 210 consecutive days at the time the policy was issued and, thus, the sixty day restrictive clause was violated at the issuance of the policy, absent any waiver thereof. Plaintiff says if this fire had occurred within the first sixty days after issuance of the policy defendant would contend that the property was vacant longer than the prescribed sixty days and that it is immaterial that such vacancy or a part of it occurred before the issuance of the policy. The difficulty with plaintiff's argument is that while an insurer may so contend it will not be a successful contention. This is but in keeping with the spirit of the rule that in construing an insurance contract, written by the insurer, courts will not enlarge the meaning of words to the general detriment of the insured but rather, will construe exceptions to or forfeitures of coverage strictly, and if the words or phrase used is of doubtful import, will give that construction which is most favorable to the policy holders. It is our view that the sixty days continuous vacancy mentioned in the insurance policy means sixty consecutive days all occurring after the issuance of the policy. Any other construction would, generally speaking, be contrary to the best interests of the numerous policy holders of policies containing such a clause.

The record presents facts from which the jury could find under a proper instruction, that defendant's agent as a reasonable person, under the circumstances should have known the existing vacancy was likely to continue beyond the sixty day period. Defendant says its agent was told by plaintiff he would have a tenant shortly. The effect of this is for the jury as it considers all the evidence. We do not review the other instructions for no complaint has been lodged against them.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.

All concur.