BERNARD SHANLEY, Respondent, v. THE LACLEDE GAS-LIGHT COMPANY, Appellant.

St. Louis Court of Appeals, September 24, 1895.

1. **Written Contracts**: PRESUMPTION OF KNOWLEDGE OF CONTENTS BY PARTIES. A writing signed by a party to it is presumed to have been read and understood by him. If he is illiterate, it is incumbent on him to require it to be read or explained to him; and if he executes it without so doing, he will be bound in the absence of fraud.

2. **Expert Evidence, Effect of.** *Held, arguendo,* that expert evidence is, at most, advisory, and that its weight is to be determined by the trier of the facts.

3. **Sufficiency of the Evidence Under the Issues.** The evidence is considered, and is held not to conclusively establish a release alleged to have been executed by the plaintiff; also to support the plaintiff's allegations of negligence on the part of the defendant, and, further, of fraud on the part of the defendant in the procurement of such release.

*Appeal from the St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*A. & J. F. Lee* for appellant.

(1) The court erred in refusing defendant's instruction that plaintiff could not recover. *Smillee v. St. Bernard Dollar Store,* 47 Mo. App. 402; *Porter v. Brewery Ass'n,* 24 Mo. App. 1; *Matthiason v. Mayer,* 90 Mo. 385; *Christy v. Hughes,* 24 Mo. App. 275; *Clark v. Fairley,* 24 Mo. App. 429; *Caperton v. Caperton,* 15 S. W. Rep. 149; *Deutmann v. Kilpatrick,* 46 Mo. App. 624. (2) The court erred upon the question of the necessity of Shanley's knowing the contents of the release in the first instruction, given at plaintiff's

request, in refusing defendant's third instruction, and in the first instruction given by the court of its own motion. 5 Am. and Eng. Encyclopedia of Law, p. 443; *Gwin v. Waggoner*, 98 Mo. 315; *Snyder v. Adams Express Co.*, 63 Mo. 376; *Brown v. Railroad*, 18 Mo. App. 568; *Railroad v. Cleary*, 77 Mo. 634; *Rothschild v. Frensdorff*, 21 Mo. App. 318; *Taylor v. Fox*, 16 Mo. App. 521; *Mateer v. Railroad*, 105 Mo. 320; 3 Washburn on Real Property, p. 271; Bishop on Contracts [Ed. 1878], secs. 160 and 168; *Chapman v. Rose*, 56 N. Y. 157; Bishop on Contracts [Ed. 1887], sec. 346; *School Committee v. Kessler*, 67 N. C. 443; *Wallace v. Railroad*, 67 Iowa, 547; *Galliher v. Railroad*, 59 Iowa, 416; *Barker v. Railroad*, 65 Fed. Rep. 460; *Campbell v. Van Houten*, 44 Mo. App. 231. (3) There was no proper rescission of release, even if it was fraudulent. *Jarrett v. Morton*, 44 Mo. 275; *Hart v. Handlin*, 43 Mo. 171; *Estes v. Reynolds*, 75 Mo. 563; Kerr on Fraud and Mistake, 366, *et seq.*; *Henderson v. Underwriting Ass'n*, 65 Law T. 732; *Johnson v. Granite Co.*, 53 Fed. Rep. 569; *Jenkins v. Coal Co.*, 82 Iowa, 618; 1 Wharton on Contracts [Ed. 1882], sec. 285. *Hart v. Gould*, 62 Mich. 262; *Fist v. Fist*, 32 Col. App. 719; *Albert v. Besel*, 88 Mo. 150; *Henderson v. Railroad*, 53 Mo. 525; *Lee v. Dunlap*, 55 Mo. 454; *Cape Girardeau Co. v. Harbison*, 58 Mo. 90; *Mastin v. Grimes*, 88 Mo. 478; *Blair v. Railroad*, 89 Mo. 383; *Alexander v. Railroad*, 54 Mo. App. 66.

*A. R. Taylor* and *Wm. L. Murfree* for respondent.

(1) It being the duty of the master to furnish a safe and secure place for his servant to work, the mere falling of the building, in which he is engaged at his work, from inherent weakness or from the action of ordinary storms raises a fair presumption of its insufficiency and unfitness for use, and makes a *prima facie*

case of negligence on the part of the master. *Res ipsa loquitur. Turner v. Haar*, 114 Mo. 346; *Scott v. London, etc., Docks Co.*, 3 Hurl. & Colt. 596; *Kearney v. Railroad*, L. R. 5 Q. B. 411; *Mullen v. St. John*, 57 N. Y. 567; *Lyon v. Rosenthal*, 11 Hun, 46; *Smith v. Boston Gas Co.*, 129 Mass. 318; *Clare v. National Bank*, 1 Sweeney, 539; *Dixon v. Pluns*, 98 Cal. 384; *Howser v. Railroad*, 30 Atl. Rep. 906. (2) "Expert testimony is at most advisory, and its weight is to be determined by the experience and knowledge, however acquired, which the triers of the fact have of the subject-matter under consideration." *Telegraph Co. v. Guernsey, etc., Co.*, 46 Mo. App. 142; *St. Louis v. Ranken*, 95 Mo. 189; *Thompson v. Ish*, 99 Mo. 160; *Hampton v. Massey*, 53 Mo. 501. (3) The fact that an illiterate plaintiff is induced to sign a release of damage without the same being read or explained to him, is a badge of fraud, and is properly submitted to the jury upon an issue that the release is fraudulent. *Bennet v. Vade*, 2 Atk. 326; *Jackson v. Hayner*, 12 Johns. 469; *Suffern v. Butler*, 18 N. J. Eq. 220; *Schultz v. Railroad*, 44 Wis. 638; *Railroad v. Welch*, 52 Ill. 187; *Railroad v. Doyle*, 18 Kans. 58; *Sobieski v. Railroad*, 41 Minn. 169; *Vautrain v. Railroad*, 8 Mo. App. 543; affirmed, 78 Mo. 45. (4) Where a release of damages has been obtained by fraudulent devices, it is not essential to plaintiff's right of action that he should evidence a rescission of the release by tendering back the amount received thereunder, particularly if it is reasonably certain that such tender would be refused. *Girard v. St. Louis Car Wheel Co.*, 27 S. W. Rep. 648; *Deichman v. Deichman*, 49 Mo. 107; *West Lake v. St. Louis*, 77 Mo. 47; Bigelow on Frauds, p. 424.

BIGGS, J.—This is an action for personal injuries. On the seventeenth day of May, 1891, the plaintiff was

in the employ of the defendant as a stoker, and, while thus engaged, the roof of the retort house in which he was working suddenly and without warning fell, causing serious personal injuries to him. The allegation of negligence in the petition is as follows, to wit: "Plaintiff says that the injuries aforesaid were directly due to the carelessness and negligence of the defendant in omitting to have and maintain a proper roof over the said building; that, by the carelessness and negligence of the said defendant, the roof over said building containing said retorts wherein the said plaintiff was at work, as aforesaid, was defectively constructed, and the defects in the construction were known to, or could by the proper exercise of ordinary care and diligence have been known to, the defendant; that by the carelessness and negligence of the defendant the said roof over said building as aforesaid was in a dangerous and unsafe condition at and for a long time prior to the occurrence aforesaid, and defendant carelessly and negligently allowed and permitted said roof to remain in such dangerous and unsafe condition, although it knew, or could have known by exercise of ordinary or reasonable diligence, of the unsafe condition of said roof."

The answer admits the employment and the falling of the roof, but denies all other allegations. As affirmative defenses it charges contributory negligence, and a full settlement and release of the claim in which the plaintiff was paid $282.50.

In the replication the receipt of $282.50 was admitted, but the plaintiff denied that it was received in full settlement of all damages sustained by reason of the injuries. As to the alleged written release, it was averred that, if plaintiff gave any such release, it was obtained from him at a time when he was "so mentally infirm as to be unable to contract, and was so obtained by defendant by fraud and covin," etc.

Under the instructions of the court the jury re-
turned a verdict for $1,689.02, upon which judgment was
entered.   The defendant, having unsuccessfully moved
for a new trial, has brought the case here for review,
and urges that its instruction for a nonsuit ought to
have been given, for the reason that no negligence on
the part of the defendant was shown, and that it con-
clusively appears from the evidence that whatever claim
the plaintiff may have had was fairly and fully settled;
also that the jury were misdirected, and that errors
were made in the admission and rejection of evidence.

In the first place, it is argued that there is a fatal
variance, in that it is averred that the roof fell by
reason of defects in its construction, whereas the evi-
dence introduced by plaintiff tended to show, if it proved
anything, that the spreading of the walls of the build-
ing caused the roof to fall.   There is no merit in this
argument.   The plaintiff's evidence tended to prove
that the roof rested on and was supported by the side
walls of the building; that, at the time of the accident
and for some time prior thereto, the east wall was out
of plumb three inches at the top and three inches at
the bottom, and that the west wall had bulged in the
center at least six inches; and that the spreading of
the walls threw an additional strain on the girders,
thereby breaking the stirrups to which the rafters were
bolted.   This evidence tended to prove that the roof
was in "an unsafe and dangerous condition," as alleged
in the petition; hence there was no variance between
the allegations and proof.

But it is insisted that the evidence conclusively
shows that the roof could not have fallen on account
of the alleged defects in the walls.   As before stated
the witnesses for plaintiff testify to the contrary of this,
and they undertake to give reasons for their conclusion.
The defendant called as a witness a civil engineer who

testified, and undertook to demonstrate, that the roof could not have fallen from any such cause. The defendant also introduced another witness who testified that his avocation was that of a builder; that he had examined the *debris* of the roof, and from his examination he was satisfied that the accident was caused by the parting of one of the iron chords at a weld; that the iron had become crystalized at that point, and that the defect could not have been discovered except by a microscopical examination. Thus both theories had the support of the opinion of witnesses who professed to have some technical knowledge of the subject. As expert testimony is, at most, advisory ( *Western Union Telegraph Co v. Guernsey, etc., Co.*, 46 Mo. App. 142), the cause of the accident was properly submitted to the jury. As the issue was found for the plaintiff, and as there was evidence tending to prove that the superintendent of the defendant was apprised of the defective condition of the walls prior to the accident, the assignment that there was no evidence tending to show negligence by defendant must be overruled.

Again, it is urged that the demurrer to the evidence ought to have been sustained, for the reason that the testimony conclusively showed that the plaintiff for a consideration compromised his alleged claim, and released the defendant from all liability on account of it. As this was an affirmative defense and the burden of proving it rested on the defendant, and as both the settlement and the release were controverted, we can not conceive upon what principle the circuit court could have withdrawn that issue from the jury. It seems that the defendant held a policy of insurance in the Employers' Liability Insurance Company, protecting it against all claims for damages by its servants for personal injuries received by them while in the discharge of their duties. At the suggestion of the vice president of the

defendant company the insurance company sent Edward V. Papin, its agent and adjuster, to see the plaintiff for the purpose of effecting a settlement of his claim. Papin testified that he called on the plaintiff and settled his claim, and that he took from him the following receipt, to wit:

"ST. LOUIS, June 12, 1891.

"Received of the Lacede Gaslight Company the sum of two hundred and eighty-two and 50-100ths dollars ($282.50) in full settlement and satisfaction of all damages by me sustained by reason of personal injuries, loss of time and expense, and every other damage resulting from the accident at their works on Convent street, near Second street, St. Louis, Mo., on the 17th day of May, 1891, and in consideration thereof I hereby release said company from all liability on account of such accident and damage resulting therefrom."

his<br>"BERNARD X SHANLEY."<br>mark.

"Witness to signature,

"Edward V. Papin."

Papin was not required, on his examination in chief, to state the conversation between him and Shanley concerning the basis of the settlement. He merely testified that he went to Shanley's house for the purpose of adjusting the claim; that he did adjust it, and that Shanley executed the foregoing receipt by making his mark, and that he witnessed his signature. On his cross-examination he admitted that no one was present when the settlement was made, and that Shanley was still confined to his room on account of his injuries. He would not swear positively that he read the receipt to Shanley, but stated that his recollection was that he either read or explained it to him. He also admitted that a telegram had been received from the president

VOL. 63—9

of the company expressing sympathy for those who had been hurt in the accident, and he was quite certain that he mentioned that fact to plaintiff. Whether the telegram directed the defendant company to advance any money to the men who were injured until they were able to go to work, he did not remember, and he had no recollection of stating this to plaintiff. In addition to the testimony of Papin, there was that of two or three witnesses who testified substantially that, some time in July, they had conversations with the plaintiff, in which he stated that the vice-president of the company had promised him steady work, and for that reason he had settled his claim against the company. There was also evidence tending to prove that the plaintiff was put to work again and so continued for about a month, when he was discharged for drunkenness. The vice-president of the company did not testify, and there was no evidence that the plaintiff went to work again and was received by the defendant on the faith of any agreement with the vice-president.

On the other hand, the substance of the plaintiff's testimony is that Papin stated to him that a telegram had been received from the president of the defendant, which directed the payment of some money to all of the men who were injured and had families, in order that they and their families might have something to live on while they were unable to work; that he received the money with that understanding; and that Papin said nothing about a settlement of his claim for damages, and that he did not sign, and was not called upon by Papin to sign, any paper. He further testified that, about a month afterward, he went to see the vice-president of the company and asked to be employed at some light work, and that he said to him that, as the company had kindly advanced him money, he would not, to use his own homely expression, "go to no contra-

riness" with the company if it gave him steady work that he was able to do. He admitted that he had talked with two of the witnesses introduced by the defendant, and that he said to them in effect that he had stated to the vice-president of the company that he would not sue on his claim, provided he was given steady work. He admitted that he was re-employed, but claimed that he was discharged without cause. It thus appears that there was a sharp and positive conflict in the testimony, both as to the nature of the transaction between Papin and the plaintiff and the execution of the receipt. As to the subsequent talk which the plaintiff admits that he had with the vice president, there is no evidence that the defendant was induced to take the plaintiff back into its service by reason of his statement that he would not sue for damages if he was given continuous employment.

The plaintiff's fourth instruction is erroneous, in that it required that the plaintiff should understand the release in order that he should be bound thereby. That is not the law. The receipt was plainly written, and, if the plaintiff executed it at all, the law presumes that he read it, and, having read it, the further presumption must be that he understood it. Or, if the plaintiff is illiterate as it appears that he is, it was his duty to require Papin to read or explain the receipt to him; and if he signed it without having it read or explained, he will be held in the absence of fraud, for it is his own folly that he should sign a paper without knowing its contents. This is the universal law, and needs no citations to support it. The instruction was prejudicial in view of the testimony of Papin, that he was uncertain whether he read or explained the receipt to the plaintiff.

It is also claimed that the instructions are erroneous in that they submitted to the jury the question of

fraud on the part of Papin in making the settlement, and the want of capacity on the part of the plaintiff to understand its nature. The ground of the objection is that there is no evidence of either fact. In this we think counsel are in error. The evidence tends to show that the plaintiff had received severe injuries about the head; that his skull was badly fractured; that the injury was such as to have a tendency to impair, and had to a certain extent impaired, his mental faculties; that, before he had recovered so as to leave his room, he was visited by Papin; that Papin made the settlement with him without the presence of anyone; that the plaintiff's wife, although in the house, was not consulted or advised of the settlement, and that the plaintiff had no opportunity to take counsel of anyone. These facts are consistent with the theory that Papin acted in perfect good faith, and that the plaintiff thoroughly comprehended the nature of the business; but contrary inferences were permissible.

In view of a retrial we think it proper to call attention to the plaintiff's first instruction. In the latter clause, plaintiff's lack of knowledge is uselessly injected, and in such a way as to confuse the jury. The jury was told that, if plaintiff did not execute the paper "and did not know the contents of the paper," then the plaintiff was entitled to recover. If the plaintiff did not sign the paper nor authorize it to be signed for him, it was entirely immaterial whether he understood its contents or not.

Other points are argued in the briefs, which we do not think necessary to discuss, as the result would not be changed. The opinion treats of every material question, and is sufficient, we apprehend, for a retrial of the case. For the error pointed out in the plaintiff's fourth instruction, the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.