HENRY ZEILMAN, RESPONDENT, v. CENTRAL MUTUAL INS. ASSOCIATION, APPELLANT.*

Kansas City Court of Appeals. December 2, 1929.

146

*Corpus Juris-Cyc. References: Contracts, 13CJ, section 251, p. 372, n. 39; Insurances, 32CJ, section 574, p. 1324, n. 45; section 575, p. 1325, n. 60; section 601, p, 1333, n. 62; section 605, p. 1337, n. 94; section 606, p. 1338, n. 2; 33CJ, section 706, p. 41, n. 77; Life Insurance, 37CJ, section 177, p. 455, n. 79.

*John P. Peters* and *E. M. Zevely* for respondent.

*Irwin & Bushman* for appellant.

BLAND, J.—This is an action on a life insurance policy or "certificate of membership" dated July 7, 1924, and in the sum of $1,000. The insurance was written by the defendant upon the life of Gertrude Zeilman, the wife of plaintiff. The insured died and defendant refused to pay the loss resulting in this suit for $875, the sum of $125 having been paid upon the loss by way of settlement and discharge but which plaintiff claims was merely a partial payment upon the loss. There was a verdict in favor of plaintiff in the sum of $875 and interest amounting to $21.87½. Defendant has appealed.

The answer denied liability upon the policy on the ground of misrepresentation and breach of warranty on the part of the insured made in procuring the policy, and that the insured concealed from the insurer material matters concerning her health and physical condition. The answer also pleaded a release wherein plaintiff was paid the sum of $125 in full settlement of his claim against the defendant arising under the policy. Tender back of the premium was made by defendant.

Defendant is an assessment company organized under the laws of Missouri with its head offices in Jefferson City.

The facts show that there was no medical examination of insured when the policy was taken out but that one Griffin, an agent of defendant, took insured's application for the policy at the insured's home in Osage County on June 9, 1924; that the insured at that time had tuberculosis and had suffered therefrom and prior to February 16, 1924, and that she died on December 25, 1924, of this disease.

The application contained the following:

"I further agree that if accepted as a member of the Association that I warrant the truth of the answers given to the following questions: . . .

"Q. When were you last sick? A. January 27, 1924.

"Q. Are you diseased in any way? A. No.

"Q. What is the nature of your disease? A. No.

"Q. Are you in good health? A. Browncites," (meaning thereby Bronchitis).

There is no question but that the answers to these questions constituted a warranty that the insured was in good health when her application was signed with the exception that she suffered from bronchitis. As there is no question but that she was suffering from tuberculosis at the time she signed the application, from which she died, there was a breach of warranty (State ex rel. v. Allen,

310 Mo. 378), unless the defendant is now estopped to urge the same upon account of the following facts:

Plaintiff testified 'that he was present at the time the application was taken and signed; that when the question in the application "Are you in good health?" was reached insured told Griffin that she was in poor health; that she had bronchitis and lung trouble; that Griffin said he had nothing to say "as long as she was able to do her own work and could get around." Plaintiff testified that she was then doing her own work; that she was then under the care of doctors but Griffin was told of this. Later he testified that she told Griffin that she had bronchitis and bad health; that the witness "guessed" that insured saw the answers put down but he could not say whether she read the application or not, although she could read; that he did not know whether the application had anything in it in regard to tuberculosis; that Griffin wrote all the answers and insured signed the application.

The parties do not agree as to what the record shows in reference to whether insured knew that she had tuberculosis at the time she signed the application. It is admitted that plaintiff was so informed by a doctor but he testified that he did not believe it. Insured was advised by a doctor in the previous March that "she had weak lungs like tuberculosis . '. . weak lungs and likely to run into tuberculosis." However, it is immaterial to the point now being discussed whether insured knew she had tuberculosis as she knew she was under the care of a doctor for lung trouble that was likely to run into tuberculosis.

Does the failure of Griffin to insert the information that insured gave him estop defendant from insisting upon a breach of the warranty contained in the application? The rule in reference to this matter is well stated in 32 C. J., pp. 1333, 1334:

"Where the facts have been truthfully stated to its agent but by his fraud, negligence or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured." [See also Andrews v. Bulldog Auto Fire Ins. Ass'n of Chicago, 291 S. W. 508, 510, and cases therein cited; Cagle v. Ins. Co., 78 Mo. App. 431.]

However, in order for this rule to be brought into play it must appear that the insured did not know what was in the application when she signed it. In other words that she neither read the application after it was made out nor saw the answers inserted therein. It thus appears that in order for the defendant to be estopped there must have been some concealment or deception practiced by Griffin upon the insured. [Thomas v. Modern Woodmen of Am., 218 Mo.

App. 10.] It therefore, was incumbent upon plaintiff to show that the insured was ignorant of the fact that the application did not contain the information she had given Griffin when she signed it. [Modern Woodmen of Am. v. Angle, 127 Mo. App. 94, 115; Andrew v. Bulldog Auto Fire Ins. Ass'n of Chicago, 258 S. W. 714, 716; Golding v. Modern Woodmen of Am., 213 Mo. App. 171, 194.]

As before stated, plaintiff testified that he could not remember whether or not insured read the application. Under the circumstances the contention of the defendant that its instruction in the nature of a demurrer to the evidence should have been sustained, is well taken.

We have examined the case of Rissler v. American Central Ins. Co., 150 Mo. 366, and like cases cited by defendant and find them not controlling here. In the Rissler case it was held that the circumstances did not amount to fraud on the part of the insured. In that case the agent assured the applicant that certain things were not material and those things were of such a character that the insured might have well believed what the agent said about them but no reasonable person would believe that such a serious ailment as lung trouble for which the applicant was under the care of a physician and which might lead to the disease of tuberculosis would not be material to the company when passing upon a life insurance application, even though the agent told the victim otherwise in view of the fact that she was able to get around and do her own work. A reasonable person being so informed by the agent would know that he was making a misstatement which was probably influenced by his interest in the commission he would receive were the policy issued, or some other interest adverse to that of the company. If insured read the application after it was made out or saw the answers inserted therein and knew that it did not disclose what she had told Griffin, that is to the effect that she was suffering from lung trouble then, under the circumstances, the conduct of the insured amounted to collusion, under the latest decision of the Supreme Court. [See Emery v. N. Y. Life Ins. Co., 295 S. W. 571.] This is not a question of whether or not the insured neglected to mention the existence of facts about which no inquiry was made, but inquiry was expressly made in the application as to the condition of her health and whether she had any disease, and her answers were by the terms of the application made warranties. As there was a breach of warranty in this case and no facts sufficient to establish estoppel on the part of defendant, plaintiff was not entitled to recover.

The application contained a statement that Griffin was personally acquainted with the insured and recommended her as being a proper person for membership. It is contended that this act of Griffin "is imputable to defendant association. . . . These facts to-

150

gether with the fact that. defendant association upon receipt of the application issued the certificate and accepted the deceased Gertrude Zeilman to membership, now estops defendant association from denying liability on these grounds; things thus waived cease to be any longer a part of the contract." We are unable to follow this argument. No doubt an insurance company is bound by any information gained by the agent relative to the application and is constructively held to have knowledge of anything the agent is told when he takes the application, that is within the scope of the agent's authority in the matter. Assuming for the sake of the argument that the agent must be held to have known that insured had tuberculosis in view of this endorsement on the policy how does this help plaintiff? If insured signed the application knowing what it contained, and the burden was upon plaintiff to show that she did not, then under the latest ruling of the Supreme Court there was collusion on the part of the insured in procuring the insurance. Under such circumstances the knowledge of the agent is not imputable to the principal. Collusion between the agent and the applicant will be presumed without direct evidence thereof where the agent with the knowledge of the applicant inserts false answers to the questions knowing them to be false and forwards the application to the insurer. [Emery v. N. Y. Life Ins. Co., supra.]

It is claimed that the insured's application lay in the head office of the association from June 14, 1924, to July 7, of that year before the policy was issued; that the application was doubtless investigated and passed upon by the board of managers or other officers of the association who could have easily acquired further information had they desired it with respect to insured's health; that when the application came before them for their decision "with the additional information Griffin is presumed to have placed before them they could have rejected the application," and having failed to so do they waived the defense of breach of warranty.

There is no evidence that the company knew of insured's condition and we know of no principle of law, and no authority is cited to us, holding that there is a presumption that the company knew the true situation, that is, that the agent gave to them the information he had although he did not insert it in the application. Of course, this information is presumed to have been communicated by Griffin to the defendant, provided the insured did not know what was in the application when it was sent to the defendant, but if she did know, then there is no such presumption. [Emery v. Life Ins. Co., supra.]

However, it is plain that there can never be a recovery upon the policy in question. After the death of the insured plaintiff signed a full release endorsed upon the policy of insurance and delivered the same to the defendant in consideration for which he was paid by it the sum of $125 in full settlement of his claim. Plaintiff at-

tempted to escape the effect of this lease by testifying that he was unable to read and that he was told by the agent of the defendant that it was only in part payment of the loss and that defendant's agent did not read the release to him. The evidence shows that he had been to see defendant's agent at Jefferson City on several occasions about collecting the insurance and at each time he was accompanied by a friend and, at one time, by his attorney; that when he signed the release he was accompanied by a friend, who could read. It is well settled that where a person cannot read it is ordinarily as much his duty to procure some person to read or explain the contract or writing to him before he signs it as it would be to read it before he signs it if he were able to so do. Failure to obtain such a reading of the contract, or explanation of it by someone upon whom he has a right to rely, constitutes such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents. [Shanley v. The Laclede Gaslight Co., 63 Mo. App. 123; Penn v. Brashear, 65 Mo. App. 24; International Textbook Co. v. Anderson, 179 Mo. 631.] In the case of Hall v. K. C. So. Ry. Co., 209 S. W. 582, 584, this court said:

"The general rule is that parties to written contracts are not permitted to go behind the writing. This rule, however, does not obtain where one of the parties while acting as an ordinarily careful and prudent man in his situation would act, nevertheless, is misled by some fraud of the other party. To make a case under the exception to the rule two things are indispensable: (1) Fraud in the procurement of the contract practiced by one party; (2) ordinary care and prudence exercised by the other." [See also United States Breeders Co. v. Wright, 134 Mo. App. 717.] In this case the plaintiff relied upon the word of his adversary, apparently a stranger. The evidence shows that he was accompanied by a friend who could read, yet he did not have his friend or anyone else read the release. Under such circumstances we think he was guilty of negligence. [First National Bank v. Hall, 129 Mo. App. 286; Anderson v. Meyer Bros. Drug Co., 149 Mo. App. 554; Chicago St. P. M. & O. Ry. Co. v. Belliwith, 83 Fed. 437, 439; Woosley v. Wells, 281 S. W. 695, 701; Austin v. Brooklyn Cooperage Co., 285 S. W. 1015; Dyrssen v. Union Elec. Light & Power Co., 295 S. W. 116.] As was well said by the Supreme Court in Woosley v. Wells, supra, quoting from the Anderson case:

"It is trite law that a person is expected to learn what an instrument contains before he signs it, either by reading or having it read, *or by having its contents stated by some one on whom he has a right to rely*, the circumstances considered, and provided either method of obtaining the information is available without too great inconvenience."

The judgment is reversed. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.