Orville **HEINDSELMAN** and Edith **Heind-selman** (Plaintiffs), Respondents,

v.

The **HOME INSURANCE COMPANY**, a corporation (Defendant), Appellant.

No. 29255.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1955.

Rehearing Denied Oct. 13, 1955.

Not to be reported in State Reports.

J. Andy Zenge, Jr., Canton, for appellant.

Earl L. Veatch, Monticello, for respondents.

JAMES D. CLEMENS, Special Judge.

Plaintiffs sued on a fire insurance policy, and had judgment in the trial court, without a jury, for the full $1,200 coverage. Defendant appeals, urging that plaintiffs' loss

fell within the prohibition of the policy's vacancy clause. Plaintiffs counter this, claiming defendant waived the vacancy when it issued the policy.

Until December 30, 1952 one Thomas Boudreau owned a small farm on which there was a partially completed building designed but never yet used as a dwelling. The building had a roof, exterior walls, and window and door casings, and Boudreau was using it only as a catch-all. Defendant, through its local agent Jack Hartmann, had insured the structure, classified as a storage building, for $800. Hartmann had recently inspected the building and knew its condition and use. On that date Boudreau and plaintiffs came to Hartmann's office, told him of the sale of the farm to plaintiffs, and asked Hartmann to change the insurance. Plaintiffs told Hartmann they intended to complete the building, and wanted to increase the coverage because of the expected increase in value. Hartmann agreed to an increase to $1,200.

Hartmann prepared an application form for plaintiffs' signatures, in which he listed the building as a 4-room dwelling "occupied by owner", and otherwise describing it, giving details as to heating and wiring as if it were already a completed dwelling. The application contained these printed questions and handwritten answers: "Are buildings now occupied? Being remodeled." "By owner? Yes." Hartmann collected the premium from plaintiffs and issued the policy. Among the miasma of clauses was one excusing defendant from liability in event the building was unoccupied as a dwelling for as long as 60 days, and yet another, extending this to 90 days for a new building in process of construction.

The following August the building was destroyed by fire. The plaintiffs had by then brought in some building supplies and had done a small amount of work, but had never yet occupied the building as a dwelling.

■ After the loss defendant sent plaintiffs a check for all of the premium except that portion earned during the first 90 days, but plaintiffs did not cash the check. Although defendant did not plead this as an affirmative defense, it now argues that retention of the check for the unearned premium bars recovery. The point is naked of merit.

Plaintiffs confess defendant's arguments that a vacancy existed within the strict terms of the policy and that parties to an insurance contract may lawfully agree to exclude losses arising during a vacancy. They contend however that defendant waived the requirement as to occupancy.

■ We cannot agree that the agent's mere knowledge that the building was unoccupied at the time he issued the policy would be grounds for waiver of a vacancy which was continued beyond the 90-day limit. Plaintiffs rely on the cases of Prendergast v. Dwelling House Ins. Co., 67 Mo.App. 426, and Hackett Bros. v. Philadelphia Underwriters, 79 Mo.App. 16. In each case the insurer knew that the dwelling was unoccupied, yet issued a policy excusing it from liability in the event of any vacancy whatsoever. The distinction is obvious.

But we must next consider plaintiffs' contention of waiver in that the defendant, through its agent, knew that there was no intention to complete and occupy the building as a dwelling within the 90-day period, and yet issued its policy excusing itself from liability in such event. If these be the facts, plaintiffs' contention is well founded.

■ An insurer is bound by information gained by its agent in taking the application, and constructively knows what he knows. Zeilman v. Central Mut. Ins. Ass'n, 224 Mo.App. 145, 22 S.W.2d 88, 91; Wolpers v. Globe & Rutgers Fire Ins. Co., Mo. App., 61 S.W.2d 224, 226. In the case of Chamberlain v. British-American Assur. Co., 80 Mo.App. 589, the defendant issued to plaintiffs a policy containing a ten day vacancy clause, although the agent well knew the dwelling was then vacant while undergoing prolonged repairs. Two months later

the building was destroyed while still unoccupied. The Court upheld the plaintiffs' contention that the defendant had waived the ten day vacancy clause by issuing the policy with such knowledge. In the same vein, see Hoffman v. Northwestern Nat. Ins. Co., Mo.App., 38 S.W.2d 730, where a waiver of the vacancy clause was declared where the agent knew the dwelling was not and would not be occupied.

Some courts distinguish between the waiver of an existing breach of a condition of the policy and the waiver of a future breach thereof, such as plaintiffs rely on here. 45 C.J.S., Insurance, §§ 725, 726, pp. 726, 730. Missouri Courts have not done so. In Rudd v. American, etc., Ins. Co., 120 Mo.App. 1, 96 S.W. 237, 240, the insured was given a fire policy requiring that his books of account be kept in an iron safe. This, in spite of the fact that insurer constructively knew that the insured then had no such safe and could not thereafter comply with that condition. The Court held that the condition was waived by accepting the premium and issuing the policy when the insurer knew that "the stipulation was not being, and would not be, observed." Of similar import, see Rosenthal-Sloan Millinery Co. v. Hanover Fire Ins. Co., Mo.App., 219 S.W. 669, 671, where this court said: " * * * The facts in evidence suffice to support a finding that the defendant's local agent knew that the insured did not keep an iron safe upon the premises, had never kept one, and that there was no intention to comply with this particular provision of these policies; and this, coupled with the fact that defendant, under these conditions, received the premiums and to this day has retained the same, warrant a finding that the defendant wholly waived the provisions of the policies here relied upon to defeat a recovery."

Do the facts here bring the plaintiffs within the scope of this facet of the law as to waiver of the policy restriction? Specifically, did defendant, through its agent, know that the building was not and would not be completed and occupied as a dwelling within the 90-day period? Because this is a jury-waived case, we review both the law and the evidence, and may not upset the judgment unless it is clearly erroneous. Although we must ourselves weigh the evidence, we will not close our eyes to the findings of the trial judge, who "sat close to the fountainhead of justice" and who had the better opportunity to determine the credibility of the witnesses. Section 510.310 RSMo 1949, V.A.M.S.; Harrington v. Muzzy, Mo., 258 S.W.2d 637.

Admittedly, defendant's agent knew that the building was only a shell, far from being completed as a dwelling. He knew that plaintiff Orville Heindselman and his brother were turkey farmers living on another farm, and that the building was to be completed by them on a do-it-yourself basis. Plaintiff Orville Heindselman testified that he told agent Hartmann that he intended to use the Boudreau farm as a turkey range, and that when they took the turkeys over there the coming summer he and his brother Floyd were "going to complete it as we have time when we get the turkeys on the range over there", and that then brother Floyd would live in the building, "that Floyd was a carpenter and he was going to finish it when we took the turkeys over there to range." Agent Hartmann, testifying as plaintiffs' witness, did not specifically deny these statements by plaintiff Orville Heindselman. He testified he made no inquiry and recalled nothing specifically said as to the time of expected construction or occupancy, and that there was no discussion of the 60 or 90 day vacancy clauses of the policy. Defendant offered no evidence on the issue of waiver.

The plaintiffs say they announced their intention of starting construction the following summer. The mechanical details of the planned construction were spelled out by Hartmann in the application. "When?" was as pertinent a subject to the negotiations as "Who?", "What?" and "Where?". The plaintiffs' subsequent acts were consistent with their claimed announcement, as they did in fact begin moving in building supplies and doing minor work that summer. To us, plaintiffs' positive statement that the time element was

discussed is more logical and persuasive than is Hartmann's statement that he recalled nothing being said by either as to the time element. The trial judge was able to see and hear plaintiff Orville Heindselman and defendant's agent Jack Hartmann as they sat before him in the flesh, each giving his version of this disputed issue of fact. He, too, resolved the issue in favor of the plaintiffs.

We find, therefore, that the defendant knew that plaintiffs' building was not and would not be completed and occupied as a dwelling within ninety days after issuing the policy, and that it thereby waived plaintiffs' compliance with that restrictive clause of the policy.

Judgment affirmed.

ANDERSON, P. J., and MATTHES, J., concur.