**Thomas O. GOOCH, Plaintiff-Respondent,**

**v.**

**MOTORS INSURANCE CO., a Corporation, Defendant-Appellant.**

**No. 7666.**

Springfield Court of Appeals.

Missouri.

April 29, 1958.

Dearing, Richeson & Weier, Samuel Richeson, of Hillsboro, for appellant.

Roy W. McGhee, Jr., Greenville, for respondent.

McDOWELL, Judge.

This is a suit on a fire insurance policy. Plaintiff recovered a judgment for $1,000 and defendant appealed.

The policy was issued by defendant-Motors Insurance Company, September 25, 1954, for a period ending March 25, 1957, in the sum of $4,150, on a new 1954 Buick automobile. The car was destroyed by fire February 23, 1955. Proof of loss was made and payment demanded. Defendant refused payment and this action followed.

The defense is material misrepresentations which defendant contends renders the policy void. It is alleged that plaintiff made false and fraudulent misrepresentations in two particulars. First, that in order to induce defendant to issue the policy, plaintiff falsely stated that he was

over the age of 25 years when, in fact, he was 22 years of age; that if the true facts as to plaintiff's age had been known, no policy would have been issued and if, after an examination of the insured, a policy had been issued, the premium would have been $346.50 instead of $262.50, which fact was known to plaintiff at the time of the misrepresentation. Second, plaintiff falsely represented and warranted to the defendant in his application for the policy of insurance that he had traded in a 1950 Buick automobile of the value of $1,050 as a part of the purchase price, which representation and warranty were false and fraudulent, the true facts being that plaintiff's father had traded to the dealer a 1940 Buick automobile worth $50 so that the equity of the owner in the new automobile purchased was $1,000.00 less than represented by plaintiff to the defendant, and if defendant had known of the falsity of such statement, warranty and representation, it would have refused the policy.

The reply was a denial of the defenses set out in the answer and a special plea that if any facts were misstated on the application for insurance, such facts did not constitute a material representation but was an honest mistake on the part of plaintiff; that such misstatement of facts, if any, was known to the dealer-owner of the automobile involved in his capacity as agent in fact for defendant in taking the application for insurance and that defendant is bound by the agent's knowledge and acts in such transaction.

The following appears in the policy under "Conditions".

"3. The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss * * *.

"14. This policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"16. By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Under declaration (6) in the policy the insured is covered as "Class I". By the terms of the policy for rating information contained on page 4, the policy provides: "Applicable only when purpose of use is stated as 'Class I' or 'Class 3' in "Declarations number 6. The automobile is classified for rating purposes Class 1 or Class 3 on the basis of statements made by or on behalf of the Named Insured.

"Class I Means (Individual Owners Only). (b) There is no operator of the automobile under 25 years of age resident in the Named Insured's household or employed as a chauffeur of the automobile."

The evidence with respect to the purchase of the automobile is as follows: In September, 1954, plaintiff purchased a new 1954 Buick automobile from a dealer, Paul Johnson, in Piedmont, Missouri. At the time of the purchase plaintiff was 22 years of age. The stated purchase price was $4,150. The method of payment consisted of a trade-in 1940 model Buick valued at $1,050 plus $265 in cash, leaving an unpaid balance of $2,650, which amount, plus 30 months insurance and interest in the amount of $678.20, was financed through General Motors Acceptance Corporation. It was secured by chattel mortgage on the 1954 Buick, payable in monthly instalments of $110.44.

To secure the insurance policy sued on plaintiff made and signed a written customer's statement dated September 25, 1954.

Paul Johnson, agent for Motors Insurance Corporation, defendant, prepared the statement on information received from plaintiff. The statement is in evidence as defendant's exhibit (1) and consists of two pages.

In this application, plaintiff's name is stated as Thomas O. Gooch; age 25; white; residence, Van Buren, Carter County, Missouri; home, U. S. Army. Just above plaintiff's signature, on page 1 of the exhibit, these words are written: "Undersigned Warrants The Truth and Accuracy of Foregoing Information". It is signed by Thomas O. Gooch and J. W. Gooch.

The second sheet of the exhibit, labeled "Dealer's Work Sheet", is signed by "Johnson Buick Sales, by Paul Johnson". This part of the exhibit contains the following statement: "Total down payment $1,050 trade-in, cash $265. Description of trade-in-Make, Buick, Model 4 dr., year 1950." Plaintiff testified that Johnson filled out the application for insurance, asked him his age, etc., and that after it was filled in and completed, he signed it.

He testified he told Johnson his true age, 22 years, and, that the Buick automobile trade-in was a 1940 model. He admitted his age, as stated in the application, and the statement that the trade-in was a 1950 Buick automobile, were wrong but he stated Johnson knew the true facts and that he signed the statements, without reading them.

There is no dispute that the 1940 Buick trade-in had been given plaintiff by his father, who was a second-hand car dealer and had purchased the car in St. Louis, some two months before. The father testified the purchase price was somewhere between $150 and $250 but he did not remember. The title to this car was transferred to the buyer on the date of trade. It is, likewise, admitted that plaintiff never secured a Missouri license for the 1954 Buick but operated it on the license obtained for the trade-in 1940 Buick. The

possession of the 1954 Buick was in plaintiff's father at all times after plaintiff was discharged from the Army in December, 1954. The car was involved in a wreck and badly damaged prior to February, when it was totally destroyed by fire. Claim had been made for the damages prior to the fire on the insurance policy but not settled.

Plaintiff testified that the 1940 Buick automobile was not worth $1,050, at the time of the trade, to him, but, he said he did not know what others would pay for it.

Paul Johnson testified for plaintiff that he was the dealer who sold the 1954 Buick automobile to plaintiff. He said he could not testify whether the application was filled out by him or his secretary but that the papers were always filled out before the customer signed them. He gave this testimony:

"Q. You remember they were filled out prior to the time they were signed? A. They sure were."

As to plaintiff's age as shown in the Customer's Statement, Johnson gave this testimony:

"Q. Now you told Mr. McGhee you didn't recall what Mr. Thomas O. Gooch told you about his age Mr. Johnson, I will show you defendant's exhibit No. 1, which is the customers statement, and point out to you here, age 25, did you or your secretary fill in that age? A. Yes, sir.

"Q. Did you put in the age Mr. Gooch told you at that time? A. We put in the exact age.

"Q. It was your intention then to place in this customers statement the age given you by Mr. Thomas O. Gooch at the time it was filled out? A. The insurance was figured on that.

"Q. Are you aware of the ruling and requirement that drivers under 25 years of age take a higher rate of insurance than 25 or over? A. Yes, sir."

We think the facts are undisputed that the premium for an applicant 25 years of age or over was $262.50, which amount was charged for the policy in issue. Had the age been properly stated, 22 years, the premium would have been $346.50, had a policy been issued.

At the time of trial Johnson had paid General Motors the indebtedness due on the 1954 car. At that time plaintiff had paid three instalments of $110.44 each, so the full amount paid by plaintiff at the time the car was destroyed by fire was the 1940 Buick trade-in, cash $265, and the three instalments.

Defendant admits that Johnson was an agent of the company with power to act for the company in taking applications for insurance.

In our opinion we will refer to appellant as defendant and to respondent as plaintiff, the position they occupied in the lower court.

We are not favored with a brief on the part of plaintiff-respondent.

Defendant's first allegation of error is as to the court's refusal to direct a verdict for defendant because the evidence conclusively shows that plaintiff misrepresented material matters in obtaining the insurance.

As an inducement for the issuance of the policy on his 1954 Buick automobile, insured stated in his application that he was 25 years of age and warranted the answer to be true. Under the provisions of the policy issued to plaintiff in pursuance to this application, a Class 1 rating was given and the policy provides that there is no operator of the automobile under 25 years of age resident in the named insured's household or employed as chauffeur of the automobile.

It is admitted by plaintiff that if his age had been truthfully stated as 22 years, the premium on the policy would have been $346.50 instead of $262.50. The warranty and misrepresentation contained in plaintiff's application for insurance, was a material misrepresentation because the premium was determined by the age of the insured.

In Berry v. Equitable Fire & Marine Ins. Co., Mo.App., 263 S.W. 884, 886(1), the law is stated:

"A fact material to the risk within the meaning of the word 'material' as used in the statute is one which, if communicated to the insurer, would cause refusal to insure, or, if accepted and policy issued, the rate would be higher. Farber v. American Automobile Ins. Co., 191 Mo.App. [307] loc. cit. 327, 177 S.W. 675. * * *"

In Bushong v. Security Ins. Co., 214 Mo. App., 462, 253 S.W. 175, plaintiff represented, in the application, that the car to be insured was a 1918 model. Proof showed a 1916 model. The rate of insurance was figured on the model. On page 177(1) of 253 S.W. of the opinion, the court said:

"A reference to the warranty above quoted shows the car was insured as a 1918 model, and it is conceded that it was, in fact a 1916 model. The premium charged was upon a 1918 model, and the rate was fixed accordingly. The conclusion therefore is inevitable that no insurance was issued on a 1916 model car, which was the one destroyed. In Smith v. American Automobile Insurance Co., 188 Mo. App. 297, 304, 175 S.W. 113, 115, this court said:

" 'The representations of the applicant become the basis of insurance, and if they be false, touching matters material to the risk, the contract obtained through their influence can not be enforced; and it is, in such case, quite immaterial whether the misstatement resulted from bad faith or from accident or ignorance.'—citing authorities."

In Zeilman v. Central Mut. Ins. Ass'n, 224 Mo.App. 145, 22 S.W.2d 88, 90(2), the

court stated this law in consideration of a life policy:

"Does the failure of Griffin to insert the information that insured gave him estop defendant from insisting upon a breach of the warranty contained in the application? The rule in reference to this matter is well stated in 32 C.J. pp. 1333, 1334:

" 'Where the facts have been truthfully stated to its agent but by his fraud, negligence or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured.' * * *

"However, in order for this rule to be brought into play it must appear that the insured did not know what was in the application when she signed it. In other words that she neither read the application after it was made out nor saw the answers inserted therein. It thus appears that in order for the defendant to be estopped there must have been some concealment or deception practiced by Griffin upon the insured. Thomas v. Modern Woodmen of America, 218 Mo.App. 10, 260 S.W. 552. It therefore was incumbent upon plaintiff to show that the insured was ignorant of that fact that the application did not contain the information she had given Griffin when she signed it. * * *"

In the instant case plaintiff did testify that when he signed the application for insurance he did not read the answers to the questions as to his age or as to the model of the trade-in car, but he made no denial that the answers were not plainly shown on the application or that there was any concealment or deception practiced by either Johnson or his secretary upon the insured. The application in evidence shows that these statements were made in large letters on white paper, plain-ly visible to anyone who wanted to see them and plaintiff admits that both he and his father signed the application. Plaintiff was a high school graduate, had been a member of the Armed Services and, at the time of this suit, was a member of the police force in Creve Coeur, Missouri. Plaintiff's evidence wholly fails to justify a plea of estoppel. There is not the slightest evidence that concealment or deception was practiced by agent, Johnson, or by his secretary in securing the written application for the insurance. The rule of law is that, in absence of fraud or mistake, one is bound by the written contract, which, when applicable, defines the limits of the contract. One who can read and does not read is foreclosed by his own negligence, and while law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658.

In the Dickinson case this court held that an equitable estoppel presupposes that person claiming it is one who is excusably ignorant of true facts and who had right to rely upon such words or conduct and to believe and act upon them.

In Muller v. Mutual Benefit Health & Accident Ass'n, 228 Mo.App. 492, 68 S.W. 2d 873, 882(5), the law is stated:

"It is true that a person who is competent to contract is, ordinarily, presumed to know the contents of a contract he signs; and the fact that he does not read it or does not have it read to him before signing does not rebut the presumption. International Text-Book Co. v. Anderson, 179 Mo.App. 631, loc. cit. 637, 162 S.W. 641. It is only where fraud, accident, or mistake intervenes that one may be relieved under such circumstances. In the absence of fraud, accident, or mistake appearing, the law concludes the matter in

accord with the terms of the writing that the party has signed; for, if he can read, he must do so; and if not, then it devolves upon him to have another read or explain it to him. Same authority supra. In the case of Zeilman v. Central Mutual Insurance Association, 224 Mo.App. 145, 22 S.W.2d 88, loc. cit. 92, decided by this court, the same doctrine was announced. * * *

" * * * 'To make a case under the exception to the rule two things are indispensable: (1) Fraud in the procurement of the contract practiced by one party; (2) ordinary care and prudence exercised by the other.' "

We agree with defendant's contention that under the facts in the instant case, plaintiff is bound by the written application for insurance, which is a part of the contract, and that insured, after signing the warranty as to his age, which is a material misrepresentation and which was acted upon by the insurer, insured is estopped from denying knowledge of the terms of such application.

We find the trial court erred in submitting this cause to the jury. That defendant was entitled to a directed verdict as prayed for at the close of plaintiff's case and at the close of all of the evidence.

It is unnecessary to pass upon the other errors raised in defendant's brief.

Judgment reversed with instructions that the judgment of the lower court be set aside and judgment entered for defendant. So ordered.

STONE, P. J., and RUARK, J., concur.